# IN THE MATTER OF THE ESTATE OF JULIA H. AFONG, DECEASED.

## No. 1322.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. C. S. FRANKLIN, JUDGE.

ARGUED AUGUST 18, 19, 1921.              DECIDED AUGUST 29, 1921.

COKE, C. J., KEMP AND EDINGS, JJ.

WILLS—*contest—practice—issues of fact.*

> On an appeal to the circuit court from an order of a circuit judge sitting in probate admitting or refusing to admit a will to probate the issues of fact to be tried by the jury need not be framed and filed as a separate document. Because of convenience it has become the practice in this jurisdiction to frame and file issues of fact in such cases but there is no statute or rule of court requiring the same.

SAME—*same—undue influence—sufficiency of evidence.*

> It is the settled law in this jurisdiction that in passing upon the sufficiency of the evidence to warrant submitting to the jury the question of whether or not the will is the result of undue influence the evidence must be considered in the light most favorable to the defendant. The proponent must be considered as admitting not only the facts which the contestant's evidence tends to establish but every inference which the jury might fairly draw from such evidence and in order to justify directing a verdict for proponent there must be such insufficiency of evidence in fact as to amount to insufficiency in law.

EVIDENCE—*contest of wills.*

> In cases involving the contest of wills upon the ground of undue influence the courts generally permit an unusually wide range of inquiry.

SAME—*error in admission not reversible when.*

> The erroneous admission or exclusion of evidence does not authorize setting aside the verdict unless upon all the evidence it appears to the court that the truth has thereby not been reached.

### OPINION OF THE COURT BY KEMP, J.

The Bishop Trust Company, Limited, a corporation authorized by law to act as executor in this Territory and named as executor in a writing purporting to be the last will and testament of Julia H. Afong, offered said will for probate in the circuit court of the first judicial circuit. The circuit judge after a hearing admitted the will to probate and A. Henry Afong and Bessie R. Burns, children of the testatrix, who had contested the admission of said will to probate, appealed to the circuit court where a trial was had before a jury and a different circuit judge. The issues of fact framed for the jury trial were as follows:

"1. Was the alleged will offered for probate herein, dated March 5, 1912, made by Julia H. Afong, under the undue influence of Albert F. Afong, one of her children, and/or of any other person or persons?

"2. Was the said alleged will procured to be made by said Julia H. Afong by the fraud, misrepresentation and artifice of said Albert F. Afong and/or of any other person or persons?

"3. Was the said alleged will made by Julia H. Afong as her free act and deed?"

The jury answered the first two questions contained in the issues of fact as framed in the affirmative and the third question in the negative, whereupon the court entered a judgment declaring the alleged will to be void and refusing to admit it to probate. To reverse this judgment and to review the proceedings had in the circuit

court in the jury trial the proponent of the will comes to this court upon writ of error.

The assignments of error are very voluminous but plaintiff in error has by a failure to refer to many of them in its brief and argument abandoned them. Those which are set out in the brief as relied upon challenge the correctness of the rulings of the circuit court in refusing to dismiss contestants' appeal for want of issues of fact; in admitting certain testimony of the witness Henry Holmes and in instructing the jury as to the law of the case. The question of the sufficiency of the evidence to warrant the court in submitting the case to the jury is also raised by the assignments and vigorously presented by counsel for plaintiff in error. The exact questions raised will be more fully set out as the discussion progresses.

First, as to the court's refusal to dismiss contestants' appeal for want of issues of fact. The only reference to the assignment of error raising this question to be found in the brief consists of a copy of said assignment among those relied upon. Not a word of argument or statement as to how the issue was raised or where in the record this court can find that information is given and counsel has not referred to it in the oral argument. Under these circumstances we think we would be justified in treating the assignment as abandoned, but since counsel for defendants in error have presented their contentions on the question we will briefly notice it. Contestants had filed in the probate court a contest setting forth certain alleged facts upon which the contest is based and proponent had filed an answer denying these facts. These documents were before the circuit court and are included in the transcript before us. After the hearing before the probate judge at chambers and his decision in favor of the will contestants duly appealed to the circuit court and moved for a trial by jury. Their notice of appeal stated that contestants

"do hereby move the appellate court, to-wit, the circuit court of the first circuit of the Territory of Hawaii, that the issues of fact in the above entitled matter, and more particularly the issue of the validity of said alleged last will and testament and the issues of fact set forth in the contest of said last will and testament filed by these contestants in said matter may be tried by a jury." After the jury had been chosen and before any evidence had been offered counsel for proponent moved for a dismissal of the appeal on the ground that there was no issue of fact. The court denied the motion and ordered the contestants to furnish a "more definite issue of facts." The contestants thereupon filed the issues of fact above set out. We have no statute nor rule of court requiring the filing of any specific document entitled "Issues of Fact." As a matter of convenience it has become the practice in such cases as this for the contestant to have framed the issues of fact to be tried by the jury but where as in this case the facts upon which contestants relied to defeat the alleged will are fully set out in other documents in the case there is no objection except that of convenience to proceeding to try before a jury all of the facts thus put in issue. See *Estate of Brenig,* 7 Haw. 640.

Two assignments of error relate to the instructions given the jury. The court refused to give proponent's requested instruction No. 14 as follows: "I instruct you that to establish undue influence the evidence must be not merely consistent with the theory of undue influence but inconsistent with any other theory," and gave the following modification thereof: "I instruct you that to establish undue influence the conclusion reached by you from the preponderance of the evidence must be not merely consistent with the theory of undue influence but inconsistent with a contrary theory." It will be seen that the only difference between the instruction as given and as

requested consists of a substitution for the word "evi- dence" "conclusion reached by you from the preponder- ance of the evidence." The court might well have given the instruction as requested but we think there was no error in giving it as modified. The instruction as modi- fied merely means that the evidence found by the jury from the preponderance of the evidence to be true must be not merely consistent with the theory of undue influ- ence but inconsistent with a contrary theory.

The other instruction complained of is contestants' instruction No. 6 as follows: "It is not the means em- ployed so much as the effect produced which must be con- sidered in determining whether undue influence has attrib- uted to the making of a will; for though the influence exerted over the testatrix was such as if applied under ordinary circumstances or exercised over persons of ordi- nary powers of resistance would be regarded as innocent yet if in the particular case it resulted in destroying the free agency of the testatrix and the resulting disposition of property contrary to the desire of the testatrix the influence was undue." The argument is that this instruc- tion implies that the jury must find Mrs. Afong had less than ordinary powers and was therefore wrong. Of course if the instruction did so imply it would be wrong but we are unable to find any language in the instruction sus- ceptible of this construction.

The most important question in this case is that raised by the proponent's request for a directed verdict, the argument being that there was not sufficient evidence to warrant the submission of the case to the jury. It is the settled law in this jurisdiction that in deciding this ques- tion the evidence must be considered in the light most favorable to the contestants; that the proponent must be considered as admitting not only the facts which the con- testants' evidence tends to establish but also every infer-

ence which a jury might fairly draw from such evidence; that in order to justify the direction of a verdict for proponent there must be such insufficiency of evidence in fact as to amount to insufficiency in law; that there must be an absence of material and substantial evidence which if believed by the jury would in law justify a verdict for the contestants; that the question is not whether the evidence shows in our opinion that the will was procured by undue influence but whether it was such that the jury could reasonably have so found. *Will of Notley,* 15 Haw. 435, 438. Both parties rely upon the law announced in that case to support their contention in this. As said in that case: "The question of the mental and even the physical condition or capacity of the testator is a most important one in cases of this kind. What will control one person's mind will not control another's. The question is whether the testator was in fact controlled by another in the making of his will. Any amount of evidence of desire and opportunity alone to exert influence will fall short of proof that the will was the result of undue influence. The question is whether the exertions, if there were any, were undue and effectual." It is also stated in that case that "the undue influence must be proved to have operated as a present constraint at the very time of making the will * * *. And yet direct evidence of such influence at the precise time of execution is not indispensable. That may be shown by circumstantial evidence. Mental weakness on the part of the testator and general control over him, and desire and opportunity to control him in the disposition of his property by will may be shown—but only in so far as it tends to show that undue influence was in fact operative at the time of the execution, and in such cases the indirect evidence must be of a clear and convincing character." The main differences, as we view them, between the *Notley* case and this case lie in the fact that the court

found in that case that not only was there abundant evidence that deceased was of strong and sound mind and body but this was uncontradicted and that while there was evidence sufficient to show that the party charged with the undue influence in that case had the disposition and desire to influence the testator in the matter of his will there was no evidence tending to show that she ever had general control over him, while in the present case there is ample evidence to justify the jury in finding that the testatrix was of a very facile disposition and of such weak will as to be easily subjected to the control of others and that her son Albert from about 1904 to the time of her death in 1919 exercised general control over her and her affairs. It is true that there is no evidence that Albert or any one else other than the attorney who drew the will and the subscribing witnesses was present when the will was drawn nor any direct evidence that Albert or any one else exerted or attempted to exert any influence either undue or otherwise over the testatrix at the time the will was actually signed, but, as said in the *Notley* will case, this may be shown by circumstantial evidence, and while we do not propose to detail in this opinion the evidence which would justify the jury in concluding that said will was the result of undue influence exercised over the testatrix by her son Albert we have no hesitancy in saying that in our opinion the evidence was amply sufficient to warrant the jury in so concluding. The circuit judge therefore made no mistake in submitting the case to the jury.

We come next to a discussion of the assignments of error which relate to the admission of certain evidence given by the witness Henry Holmes. Before discussing the specific objections to the testimony of Mr. Holmes we call attention to the general policy pursued by the circuit judge in ruling on the admission of evidence in this case.

In cases involving the contest of wills upon the ground of undue influence the courts generally permit an unusually wide range of inquiry. The circuit judge announced at the beginning of the trial that he would pursue this policy and both parties took advantage of it by offering testimony ranging over a long period of years and covering many issues which considered separately would seem to have little bearing on the question of the validity of the will. The policy pursued by the circuit judge in this case has not only been approved by this court but is so universally adopted that it needs no further commendation. (*Will of Notley, supra.*) In this case it permitted the presentation to the jury as accurately as possible the characters involved in the family tragedy, their relations to each other and the ultimate result. The character of the principal actors and their conduct towards each other were by an accumulation of details gradually placed before the jury for its inspection. The story began with the departure of the husband of the testatrix for China in the year 1890 and the establishment of a trust estate by said husband for the support of his wife and his fifteen children left behind and came down to the very time of the trial itself. The story was detailed in the testimony of many members of the family and others. It was shown that Mrs. Afong was married at the age of sixteen or seventeen years to Chun Afong and raised a family of fifteen children; that Chun Afong in 1890 departed to make his home in China after placing certain property in trust, the income from which was to be used by Mrs. Afong for the support of herself and her children and the corpus to be divided among her children upon her death; that there had been disagreements between Mrs. Afong and certain of her children as to her management and use of the income from said trust resulting in litigation which had been compromised and a compromise agreement

drawn up and signed by the interested parties. The contestants produced evidence to the effect that Mrs. Afong had promised her eleven children who were loyal to her in this litigation that if they would stand by her she would on her death leave a will dividing all her property equally between the eleven who were loyal to her. The contestants were among the eleven who were loyal in this instance. This evidence was admitted for the purpose of showing the state of mind of the testatrix and her intentions as to the disposition of her property at the time of the compromise. Albert F. Afong, another one of the loyal eleven, testified that his mother made no such promise and made the further argumentative statement that if she had made such promise it would have been included in the compromise agreement. To meet this testimony of Albert Mr. Holmes was permitted to testify that he as attorney for the trustee in the compromise had conferred with Mr. Dunne, the attorney representing Mrs. Afong, and had called his attention to the omission from the compromise agreement of the promise in question and that Mr. Dunne had given as a reason for omitting from the agreement any reference to such promise that he as a lawyer had never heard of a covenant to make a will in any particular way, that he did not want to disturb things and wanted to get the case behind him. This only inferentially bears upon the question of whether or not Mrs. Afong had made a promise to divide her property equally among her loyal children. Mr. Dunne's statement as given by Mr. Holmes did not quote Mrs. Afong or declare that she had or had not made such a promise. It is entirely consistent with his not knowing whether she had or not. It appears elsewhere in the record, however, that Mr. Dunne testified in another case that Mrs. Afong had made such a promise and this fact taken together with the fact that he in drawing this document as her attorney did

not include the promise required explanation and this explanation was given not as additional proof that the promise had been made but as the reason why he did not include it in the compromise agreement. As the record elsewhere shows that Mr. Dunne stated in his deposition that Mrs. Afong had made the promise (this was testified to by Albert Afong on cross-examination although the deposition was not admitted in evidence) any possible inference which might be drawn from his quoted statement that Mrs. Afong had made the promise is at the most only corroborative evidence of the fact that she had made it.

Another assignment of error relates to a portion of the testimony of Mr. Holmes in which he was permitted to state what he had theretofore said to Mr. Olson, of counsel for the proponent, in disapproval of the will in question. It had been brought out upon the cross-examination of Mr. Holmes that he had had a conversation with Mr. Olson about the will and upon re-direct examination he was asked to state what he had said to Mr. Olson in that conversation. This question being objected to counsel for the contestants said: "We want to show by this witness that in reference to the drawing of this will he stated to Mr. Olson that if he knew about a will having been drawn of this character in his office he would have disapproved of it; that he did not in any way approve of such a will being drawn in his office; that if he had known of it he would have disapproved of it." Thereupon and before the witness had answered counsel for proponent objected to this offer on several grounds: "First, that it is incompetent, irrelevant and immaterial. Second, it is opinion testimony, conclusion in its nature; not proper re-direct examination and has no bearing upon any of the issues in the case." The objection was overruled and the witness stated: "After I had seen the will and knew its contents

Mr. Olson came in my office on other business and I said to him, or I expressed my indignation at that will being made in my office. I said I thought a will should not be used for an expression of hostility by a mother to her children. I also said I would not have made that will if I had been invited to do so by Mrs. Afong." Counsel for contestants admit in their brief that they could not have offered mere opinion testimony; that they could not have put lawyers on the stand merely to testify that they did not approve of the will of Mrs. Afong and would not have drawn such a will at her request but they make several arguments in their attempt to show that under the particular circumstances of this case no error was committed." Their first argument is that Mr. Holmes was not asked his opinion of the will of Mrs. Afong or whether he approved or disapproved of that will or such wills in general, nor did he give his opinion except indirectly. They say that since he was asked only to state what he had said to Mr. Olson at a previous interview and his answer was strictly confined to what he had said to Mr. Olson at that time, in order to avail himself of the objection to the portion of the conversation in which Mr. Holmes had expressed his opinion of the will counsel should have made a motion to strike that portion of the testimony. We find no merit in this contention, however, for the reason that before the evidence was given counsel for contestants offered to prove in effect what the witness afterwards testified and the objection was to the witness being permitted to give such testimony. The rule contended for by counsel for contestants could only have application where there was no offer of proof and the evidence was not responsive to the question.

They next point out and rely upon the reason given by the circuit judge in his decision on the motion for a new trial as to why said evidence was admitted. The circuit

judge said: "It was admitted by the court for the pur-
pose of rebutting the statement of Mr. Olson, made in the
presence of the jury, that Mr. Holmes had drawn the will
in question and knew all about it, and for the further pur-
pose of clarifying the atmosphere created by the questions
propounded to the witness on cross-examination relative
to his knowledge of the drawing of the will, his partici-
pation in the fee received therefor and his discussion with
counsel for the proponent subsequent thereto relating to
the execution thereof. To safeguard the proponent and to
limit such evidence to the purpose for which it was admit-
ted, namely, to negative knowledge by Mr. Holmes of the
drawing of the will, the court instructed the jury in
instruction No. 26 that a person has the right by his will
to cause inequality of distribution to reward those who
have been affectionate and to punish those who have been
disobedient. It is the opinion of the court that this
instruction prevents what might appear without careful
consideration to be error." We can see no necessity for
admitting this testimony for the purpose for which the
circuit judge says it was admitted. Mr. Holmes had
already testified that he knew nothing of the will in ques-
tion until after the death of Mrs. Afong and in order to
show that he could not be mistaken he testified among
other things that when the will was drawn he was in
Egypt; that he had left Honolulu several months prior to
the date of the will and returned to Honolulu several
months after its execution.

They next say that even though there was error in
admitting the testimony it was harmless error. In this
connection they point out that Mr. D. L. Withington in
his deposition, offered and admitted as part of propo-
nent's case, testified that when he was preparing a prior
will for Mrs. Afong he had told her that he did not
approve of her disinheriting these same children and had

succeeded in persuading her to include them as benefi-
ciaries under that will. The argument is that this testi-
mony of Mr. Withington introduced by the proponent is
to the same effect as the evidence of Mr. Holmes under
discussion and that proponent having introduced the
opinion of one attorney cannot object to contestants intro-
ducing the opinion of another. We are of the opinion,
however, that the evidence of Mr. Withington as a whole
is not to the same effect as the testimony of Mr. Holmes.
An examination of his deposition discloses that he made
no objection to such a will in general. What he did was
to persuade Mrs. Afong not to make such a will until she
had had time to thoroughly make up her mind that she
desired to make such a will, she having just come out of a
hotly contested litigation with these contestants. How-
ever, if contestants are right in their contention that the
error was harmless of course it would not warrant a
reversal of the judgment.

The principal case relied upon by contestants as
authority for their contention is that of *Kapiolani Estate*
v. *Thurston,* 17 Haw. 312. In that case the vital question
to be determined was whether or not Okuu and Kahoopui-
pui were husband and wife. Rev. Parker, pastor of Ka-
waiahao church, was permitted to testify that the church
authorities, including himself, remonstrated with Kahoo-
puipui for living with Okuu without having married him;
that she did not observe their monitions and was there-
fore expelled from the church. The defendant in that
case argued that the fact of expulsion from the church
was *res inter alios* and not evidence of the woman's
wrongful mode of living. The court agreed with this con-
tention of the defendant expressing its concurrence there-
in in the following language: "No logical reasoning, no
theory of hearsay or *res gesta* makes this action of the
church a probative fact for the jury to consider. Its

admission as evidence against the objection of the defendant and the refusal of his request to take it from the jury was erroneous." But notwithstanding this concurrence in the contention of the defendant the court refused to reverse the judgment against the defendant and disposed of the matter in the following language: "But we do not think that on this ground alone a new trial ought to be granted. The tendency of American decisions is to enlarge the scope in civil cases of the doctrine of harmless error in admitting evidence. Wrongful exclusion of evidence is far more likely to harm than is wrongful admission. An appellate court ought not to be so ready to order a new trial upon conjecture that the jury may have based its verdict wholly or in part upon the irrelevant testimony as in cases in which a party was not allowed to make out his case. The modern jury is apt to draw its own inference from evidence before it rather than to adopt the conclusions of an ecclesiastical tribunal. * * * The judge who tried the case had time after the verdict to reconsider his ruling and in denying a new trial probably thought that the verdict was right. A trial judge properly refuses a new trial for admission of irrelevant testimony if he thinks that upon the other evidence the verdict was right and probably not influenced by the objectionable testimony, as in granting a new trial he is apt to regard the verdict as wrong. * * * By the early English rule erroneous admission or exclusion of evidence did not authorize setting aside the verdict 'unless upon all the evidence it appeared to the judges that the truth had thereby not been reached.' 1 Wigmore, Evidence, Sec. 21. But about the year 1835 English courts began setting aside verdicts for admission of irrelevant testimony unless the same fact was otherwise proved. This continued until the Judicature Act of 1873, which restored the original rule, enacting that a new trial should 'not be granted for

improper admission or rejection of evidence unless in the opinion of the court some substantial wrong had been thereby occasioned on the trial.' During forty years prior to this act 'the rule was that if any bit of evidence not legally admissible, which might have affected the verdict, had gone to the jury, the party against whom it was given was entitled to a new trial.' * * * Many American courts have adhered to the original rule. Wigmore, *supra,* citing among cases examined, *State* v. *Beaudet,* 53 Conn. 539, 'unless manifest injustice had been done on the whole case there is no ground for a new trial. There appears to be good reason for the verdict.'" In that case if Kahoopuipui and Okuu were married the defendant was entitled to recover, he being the holder of a title acquired from Okuu, who, it was claimed, was the husband and heir at law of Kahoopuipui. It will thus be seen that the evidence offered and received erroneously in that case was directed to the main issue in the case while in the case at bar the evidence under consideration was directed to a minor issue and therefore much less likely to be prejudicial than evidence directed to the main issue.

What we have said as to the harmless nature of the error in admitting this evidence of Mr. Holmes also applies to the other evidence of the same witness to which exception was taken.

All assignments of error except those discussed have been abandoned.

Finding no error in the record which in our opinion would justify ordering a new trial of the case the judgment of the circuit court is affirmed.

*C. H. Olson* (*Robertson, Castle & Olson* on the brief) for proponent-plaintiff in error.

*R. B. Anderson, B. S. Ulrich* and *U. E. Wild* (*Thompson, Cathcart & Lewis and Frear, Prosser, Anderson & Marx* on the brief) for contestants-defendants in error.