A. M. STEWART AND JAMES C. STEWART, CO-
PARTNERS DOING BUSINESS UNDER THE
FIRM NAME AND STYLE OF JAMES STEWART
& COMPANY, *v.* Z. S. SPALDING.

## No. 1297.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. C. S. FRANKLIN, JUDGE.

SUBMITTED SEPTEMBER 1, 1921.          DECIDED SEPTEMBER 9, 1921.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE BANKS
IN PLACE OF COKE, C. J., ABSENT.

APPEAL AND ERROR—*writ of error—abandonment of assignments.*

In a case submitted on briefs assignments not argued in the
briefs will be regarded as abandoned and will not be noticed.

EVIDENCE—*exclusion harmless when.*

Where the jury by finding for the plaintiff on a *quantum
meruit* count necessarily found that the contract declared upon
in another count had been broken the refusal to admit evidence
offered solely for the purpose of showing that the contract sued
upon had been modified by certain letters if erroneous was
harmless.

SAME—*error in exclusion corrected by verdict when.*

Evidence though material and proper at the time offered if
rendered immaterial by the verdict its rejection will not consti-
tute reversible error.

### OPINION OF THE COURT BY KEMP, J.

This case comes before this court upon writ of error
to the circuit court of the first judicial circuit to review
certain errors alleged to have been made during the trial
of said cause. The plaintiffs in error were the plaintiffs
in an action of assumpsit tried in the circuit court with
a jury. The complaint contains four counts. The first
count is upon a contract in writing bearing date the
29th day of July, 1909, and alleged to have been modi-
fied by certain letters dated August 3 and 10, 1909, for

the construction of a building at Portland, Oregon, a balance of more than $50,000 being claimed to be due and unpaid under said contract. The second count is in *quantum meruit* for the reasonable value of the materials furnished and the work and labor performed in the erection and completion of said building. The other two counts of the complaint are immaterial to the present discussion. The defendant in his answer denied that there remained an unpaid balance due the plaintiffs under the contract or otherwise and claimed that certain items had been improperly charged against him and that he had been damaged by reason of delay in the completion of the building and by defective construction, the amount claimed by him in these matters also being immaterial to the present discussion. The jury returned a verdict for plaintiffs under the second count in the sum of $30,824.27 without interest whereupon judgment was entered in favor of the plaintiffs for said sum of $30,824.27 together with their costs taxed at the sum of $5081.95, making a total judgment in the sum of $35,-906.22. This case has been twice tried by the circuit court of the first judicial circuit. Upon the first trial the jury returned a verdict in favor of the plaintiffs for the sum of $38,847.63 with interest from February 3, 1911, upon which the court entered a judgment for the sum of $57,038.76, which judgment was by this court reversed and a new trial ordered pursuant to the opinion of this court dated November 17, 1916, and reported in 23 Haw. at page 502.

In the record now before us there are contained ninety-seven assignments of error, but only fourteen of said assignments have been referred to in the brief of the plaintiffs in error. Under the practice in this court (the case having been submitted on briefs) those assignments of error not referred to in the brief will be regarded as

abandoned and will not be noticed. *Republic* v. *Ah Yee,* 12 Haw. 169; *Akana* v. *Territory,* 22 Haw. 479; *Estate of Afong,* 26 Haw. 147.

Assignments of error Nos. 1 to 5 inclusive and 13 all involve the correctness of the ruling of the circuit court in the exclusion of portions of the testimony of Cass Gilbert, the architect who designed the building in question, relative to the issue made by plaintiffs' contention that the written contract was modified by the letters of August 3 and 10, 1909, which are discussed and partly set out in the opinion of this court in the former appeal. In order to make clear our disposition of these assignments of error it becomes necessary to set forth something of the manner in which the case was submitted to the jury and the effect of the jury's finding. The circuit judge in instructing the jury as to the conditions under which it might find for the plaintiffs on the second count said: "Should you find that the building was not completed within a reasonable time after July 22, 1910, or that there was a substantial breach of the contract by the plaintiffs then I instruct you that the contract would be considered broken and if thereafter the defendant accepted and used the building the plaintiffs may recover if at all only on a *quantum meruit* count, that is, they may recover the reasonable value of the labor performed and the materials used in the erection of the building together with the reasonable value of their own services but could not recover for agreed commissions or interest. The right to recover on *quantum meruit* depends upon the implied promise of the defendant to pay the plaintiffs the reasonable value of the labor performed and materials furnished including the reasonable value of plaintiffs' services. This promise may be shown by either direct or circumstantial evidence, by the words or by the conduct of the parties." Under this instruction before

the jury would be authorized to find against the plaintiffs on the first count and for them on the second count it would have to find either that the building was not completed within a reasonable time after July 22, 1910, or that there was a substantial breach of the contract by the plaintiffs in other respects and that the defendant accepted and used the building. There is no assignment of error which we may consider complaining of this instruction or that there was not sufficient evidence to warrant the jury in so finding. We therefore assume that the jury properly so found.

All of the evidence rejected by the court and made the subject of the assignments of error now under discussion, namely, assignments 1 to 5 inclusive and 13, was offered solely for the purpose of establishing that the defendant ratified the letters of August 3 and 10, 1909, and that the contract actually was modified as claimed and would have no bearing whatever upon the question of the value of the labor and materials furnished in the erection and completion of said building. The jury having found against the plaintiffs on the first count and for them on the second count it must have found that the contract was broken, and, as we have seen, the correctness of this finding is not questioned by any of the assignments of error which we may consider. It has therefore become immaterial whether the contract was or was not modified and since the rejected evidence only tended to establish that the contract was modified its rejection even if erroneous was not prejudicial to plaintiffs. Evidence though material and proper when offered if rendered immaterial by the verdict its rejection will not constitute reversible error.

Assignment of error No. 6. The question of law involved in this assignment of error is whether or not a letter dated September 23, 1909, and written by Cass

Gilbert, the architect, to the plaintiffs in error, was admissible in evidence. This letter when offered by plaintiffs was objected to by counsel for defendant and was excluded. The letter in question is in part as follows:

"I acknowledge receipt of yours of the 17th inst. in which you refer to James Stewart & Co.'s letter to me dated August 3, 1909, and my reply thereto dated August 10th, 1909. Would state as follows:

"1. Items which should properly be included as part of the cost of the building. Neither the specifications nor the contract were modified in this respect and it is my recollection that my letter to you of August 10th was to be considered as part of the contract and specifications. You will note that a copy of said letter was transmitted to Mr. Spalding.

"2. Requirements of bond to be furnished to be omitted from the specifications. On reference to the contract and specifications I find that this clause requiring the bond was not omitted from the specifications. I find on my record, however, that the sum of $2500 was credited on this contract following my letter to you of August 10th, mentioned above, and this item was carried forward to the final accounting.

"3. Filing claims for delays. The contract and specifications were changed to read: 'a reasonable time' instead of 24 hours.

"4. Fire insurance. The specifications were modified to include material not only inwrought in the building but delivered in the building.

"5. Purchase of steel from the Carnegie Co. Neither the specifications nor contract were modified in this respect but in my letter to you of August 10th was assumed to form a part of the contract agreement."

Assignments of error Nos. 8, 9 and 10. These assignments of error relate to the exclusion of portions of the deposition of the witness Cass Gilbert relative to the account which plaintiffs rendered to the defendant showing the cost of the building in question. It appeared that plaintiffs had sent to the defendant an itemized account

showing the cost of the building and that the defendant had retained it for some time without making any definite claim that it was erroneous his reason therefor being that he could not understand the same.   The witness was asked, "Could the total cost be ascertained readily from the statement and vouchers submitted by Stewart & Company?" to which the witness answered, "Yes, it was simply a matter of computation."   He was also asked, "If this contract had been a lump sum contract would items of cost for scaffolding, etc., which are in controversy here, have appeared in the account?" to which the witness answered, "No sir."   He was then asked, "Why not," to which he answered, "In a contract guaranteeing the cost it is necessary to audit the vouchers for expenditures to ascertain the cost.   Such was the Stewart contract.   In a 'lump sum' contract, however, there would be no necessity for the presentation and audit of the vouchers as all expenses incident to the construction would be met by the contractor who would receive a fixed or 'lump sum' for his work regardless of the actual cost."   Each of these questions and answers was objected to by counsel for defendant and was upon his objection excluded.

Assignment of error No. 15.   During the reading of the deposition of Alexander M. Stewart, one of the plaintiffs, the following testimony was sought to be introduced in evidence by the plaintiffs: "Q   You are familiar with the provisions of Article 2 of the contract to the effect that the architect's decisions as to the true construction and meaning of the drawings and specifications shall be final? A   Yes sir.   Q   And you were familiar with this provision when you wrote to the architect your letter of August 3, 1909?   A   Yes sir.   Q   And did Mr. Gilbert construe the meaning of the specifications in his letter of August 10, 1909?   A   He did as applied to the contract."   The defendant by his counsel objected to that

portion of the foregoing testimony reading as follows: "Q And did Mr. Gilbert construe the meaning of the specifications in his letter of August 10, 1909? A He did as applied to the contract," and the same was excluded. It is perfectly apparent that all of the testimony offered and rejected as set forth in the foregoing assignments of error was offered solely for the purpose of showing what the contract between the parties was and seeking to place certain constructions upon said contract. The jury having found, as we have seen, that the contract was broken it is now immaterial what the contract was or how it was construed. The error therefore, if any, in excluding said evidence was harmless.

Assignment of error No. 14. During the reading of the direct examination of Alexander M. Stewart, one of the plaintiffs, and after he had testified that during the negotiations between his company and the defendant before entering into the contract here sued upon he showed to the defendant and to Mr. Gilbert, the architect, a copy of the contract between his firm and the Puget Sound Realty Association Corporation of Denver, Colorado, for the erection of a building in Denver, the witness was asked to produce and did produce a copy of that contract which was by the plaintiffs offered in evidence, to which said offer defendant through his counsel objected on the ground that the same was incompetent, irrelevant and immaterial and the objection was sustained. To this ruling the plaintiffs excepted and now assign the same as error. Upon the former trial of this case this same contract was admitted in evidence over the objection of the defendant and relative thereto this court said: "The contract in question was irrelevant and ought not to have been admitted. It constituted no part of the contract between the parties to this action. The question whether the plaintiffs' proposition as stated in their letter

of August 3 had been accepted and had become a part of the contract depended on whether defendant in fact knew of and acquiesced in the reply made thereto by the architect. Nothing contained in the contract with the Denver concern could throw any light on that question." In view of this ruling by this court the circuit judge could not do otherwise than sustain the objection made and in so ruling we think he committed no error.

Assignments of error Nos. 11 and 12. During the reading of the cross-examination of the witness Cass Gilbert the following testimony was given: "Q In the corridors of this Spalding building, Mr. Gilbert, do you recollect whether or not the plans made any provision for what are termed expansion joints in the corridors?" to which question counsel for plaintiffs objected on the ground that it was improper cross-examination. The objection being overruled the witness answered: "I do not." Further continuing the cross-examination of the said witness the following testimony was given: "Q That kind of construction is very common is it not, to have provision for expansion joints in these long corridors? A What part of the corridors, ceiling, walls or floors? Q The floors of the corridors? A It depends upon the material. Q If the floor material is terrazzo is it not good practice to provide for expansion joints? A Sometimes, yes. Q The purpose of expansion joints is to provide against shrinkage and cracking of the floors, is it not; is not that the purpose of them? A Yes sir, but when these expansion joints as you call them are put in, usually incorporated with panels of marble, cross-pieces of marble or of tile or of other material. Not laid as a cement floor is laid with an expansion joint but laid with another material which gives a chance for shrinkage. It really isn't an expansion joint at all. It is a shrinkage joint. Q You don't now recollect whether or not there

was any provision for shrinkage joints for the floors? A I don't recollect it." The plaintiffs by their counsel moved to strike from said testimony the foregoing questions and the answers thereto on the ground that the same were incompetent, irrelevant and immaterial and as requiring a radical departure from the terms of the contract, which motion was denied and exception to the denial thereof allowed the plaintiffs and the ruling is now assigned as error. One of the principal contentions of the defendant was that the terrazzo flooring in the corridors of the building had within a few months of the completion of the building developed many unsightly irregular cracks practically destroying the appearance of the interior of the corridors, claiming this to be due to the absence of expansion joints. Other evidence had been adduced to the effect that terrazzo flooring if composed of proper materials, properly mixed and laid with expansion joints, never cracks or at most only to a negligible degree. If as contended by plaintiffs this evidence was inadmissible in the action on the contract for the reason that the specifications therefor did not require the floors to be laid with expansion joints still it was material to the action on the *quantum meruit*. If good practice required such floors as were laid in this building to be laid with expansion joints a floor laid without them would be of less value than one laid with them. The evidence to the effect that good practice requires such joints was therefore material to the question of the value of the services of the plaintiffs in erecting the building in question and was properly received.

Finding no error the judgment of the circuit court is affirmed.

*Frear, Prosser, Anderson & Marx* for plaintiffs in error.

*W. B. Lymer* and *Robertson, Castle & Olson* for defendant in error.