MARY LUHI, A MINOR, BY MARIA K. LUHI, HER MOTHER AND NATURAL GUARDIAN, *v.* HONOLULU LODGE NO. 1 MODERN ORDER OF PHOENIX, AND COURT LUNALILO NO. 6600, ANCIENT ORDER OF FORESTERS FRIENDLY SOCIETY, ELEEMOSYNARY CORPORATIONS.

No. 1978.

SUBMITTED NOVEMBER 18, 1930.     DECIDED JANUARY 6, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

Upon the evidence in this case held: motion for new trial on the ground of excessive damages properly overruled.

OPINION OF THE COURT BY PARSONS, J.
(Perry, C. J., dissenting.)

This is an action in tort for damages for injuries to the plaintiff, alleged to have been proximately caused by the negligence of the two defendant corporations. The complaint in effect and among other things alleges that on January 2, 1928, the defendant corporation Court Lunalilo No. 6600, Ancient Order of Foresters Friendly Society, as owner, and the defendant corporation Honolulu Lodge No. 1, Modern Order of Phoenix, as lessee, of Waikiki Park, operated therein, through their agents and servants certain amusement devices, including among others a miniature railway known as the "dipper," "well knowing that said dipper operated as aforesaid was a dangerous pastime device," exposing passengers thereon to perils of which they might be ignorant. The complaint further alleges that the plaintiff, a minor, "on the said 2nd day of January, 1928, ignorant of all of the aforesaid dangers incident to said device, which was well known to the said defendants, was lawfully a passenger on said de-

vice, having paid the required amount of money for the privilege of a ride thereon, and while a passenger as afore-said, and in the exercise of due care, upon said device, said device, operated by said defendants by their servants and agents, and operated by them in a negligent and careless manner, and without providing a safe device for plaintiff to hold on to, and without giving plaintiff any warning to guard against the perils incident to the violent motions of the device or any instructions relative to her conduct while a passenger thereon, and while making a sharp turn in the track, violently jerked and jolted and lurched and threw plaintiff with great force out of her seat and down a con-siderable distance to the ground, greatly injuring her in her head, neck, shoulders, arms and back, causing her severe bodily and mental suffering, and a shock to her nervous system, from which she has ever since suffered, and will suffer for a long time to come, causing her to expend large sums of money to effect a cure, and all to the damage of the plaintiff in the sum of ten thousand dollars." The complaint refers by way of recital to each defendant as an eleemosynary corporation.

The Court of Foresters demurred to the foregoing com-plaint upon grounds which are not before us upon said defendant's bill of exceptions. The Phoenix Lodge de-murred generally and on the specific ground "that it af-firmatively appears from said complaint that this defend-ant is an eleemosynary corporation and as such is not liable for the injuries complained of herein." Both de-murrers were overruled and each defendant answered by general denial. After a trial upon the merits a verdict was found for the plaintiff and against the two defend-ants in the sum of $6000 and costs. Motions for new trial were made and denied, judgment was entered in con-formity with the verdict, and the case is now before us upon each defendant's bill of exceptions. The Court of

Foresters' bill contains ten exceptions, only two of which, namely numbers 1 and 6, are presented in its brief. The bill of the Phoenix Lodge contains eleven exceptions, one of which, number 10, was expressly withdrawn and four of which, namely numbers 1, 2, 4 and 11, are argued in its brief. The exceptions presented by the two defendants will be considered in the order in which they are above designated.

Exception number 1 of the Court of Foresters is thus set forth in its bill: "W. G. Bergin was sworn as a witness on behalf of the plaintiff, stated that he was a member of the defendant Modern Order of Phoenix and that the Phoenix Lodge were conducting a carnival in Honolulu the latter part of 1927 and the early part of 1928; that he was chairman of the carnival committee; that the Phoenix Lodge obtained the use of Waikiki Park from the defendant Foresters for the purpose of holding the carnival; that the Phoenix Lodge had a contract with the defendant Foresters to conduct a carnival; that he was unable to locate the contract; that he was familiar with the terms contained therein; whereupon the following occurred: 'Q. Can you outline briefly what those terms were? A. Well, they —— the agreement read that we were to pay the Foresters two thousand dollars for the rental of the park, and also four hundred and fifty dollars for the insurance to protect us. Q. By the insurance what do you mean; what kind of insurance? Mr. O'Brien: We object to that on the ground it's incompetent, irrelevant and immaterial, if your honor please. The Court: Objection is overruled. Mr. O'Brien: Exception.'"

Following the above exception the transcript shows the following questions and answers: "Mr. Soares: Q. What insurance do you refer to; what was the nature of the insurance? A. All liability, all public liabilities. Q. Public liability? A. For accidents. Q. And can you re-

member any other terms of the contract? A. No, I don't, unless that the —— they agreed to cover us, that's all, for that sum. Q. That is, in consideration of the payment of $450——. A. $450. Q.—— they would cover you against all public liability? A. Yes. Q. Arising out of accidents in your use of the park? A. Yes."

Under the foregoing exception counsel for the Foresters argues "that it was prejudicial error to admit the testimony of the plaintiff's witness that the defendant was insured against public liability for injuries growing out of accidents suffered by third persons." Other than as hereinabove quoted from the transcript there was no testimony that either defendant was insured against liability for accidents to third persons, or that a policy covering the Foresters was within the contemplation of the contracting parties. It is not shown that either defendant was prejudiced by the testimony. But even were the fact otherwise, prejudice alone could not be permitted to exclude relevant testimony. The testimony introduced was secondary evidence as to the terms of a written contract between the two defendant corporations. The instrument itself was not available and no objection was made on account of the secondary character of the oral testimony as to its contents. The contract was competent and relevant evidence upon the material questions as to responsibility for the proper condition, maintenance and operation of the property named and as to the respective duties to the public of the two defendants in the premises. The mere fact that the contract contained provision that one defendant, as part consideration therefor, was to pay the other defendant $450 for insurance coverage to be obtained or furnished by the latter did not render it inadmissible. The written instrument containing the provision above named would have been admissible if offered, though doubtless the defendants would have been entitled to limiting or

cautionary instructions with respect to the same if they had requested them. No such instructions as to the secondary evidence of the terms of the contract were requested. No motion was made to strike any part of the testimony. We find no error in the ruling complained of in the Foresters' exception number 1. This also disposes of Phoenix Lodge's exception number 2 as to the same ruling.

The Court of Foresters' exception number 6 is to the following instruction (plaintiff's number 3) given by the court over defendant's objection: "I instruct you, gentlemen of the jury, that the owner of an amusement park is not relieved from the duty of exercising reasonable care in the construction, maintenance and operation of a miniature railway, by leasing it to an independent contractor especially when a general supervision of the property is retained." In support of this exception the defendant last above named urges in its brief "that it was improper and prejudicial to the defendant's rights in the case to give a certain instruction embodying an abstract principle of law which, while it may be correct, was not supported by the evidence in the case and which tended to mislead and confuse the jury in arriving at their verdict." As an abstract principle of law instruction number 3 above quoted is amply supported by reason and authority. See *Turgeon* v. *Connecticut Co.*, 84 Conn. 538, cited by the trial court in its support and see the cases cited by the Connecticut court on page 542 of the report last above referred to. And there was evidence before the jury in the case at bar to which the foregoing instruction could be applied; that is to say, there was evidence to the effect that since January, 1927, the defendant Court of Foresters had been the lessee from the Bank of Hawaii, Limited, and the proprietor of Waikiki Park and had on December 24 let the same with its amusement devices, including the mini-

ature railway referred to in the complaint theretofore constructed, maintained and operated by itself, to the Phoenix Lodge for a period of ten or more days during the exhibition known as the Phoenix Circus, under a contract which required among other things that the Phoenix Lodge continue to employ, at its own expense, two of the employees of the Foresters to operate the said dipper. There was further evidence that said two employees were in charge of the operation of the dipper at the time of the accident.

If the question submitted to the jury were solely one of injury caused by negligence in the *operation* of the dipper by one or both of the employees above named, it might well be argued that the instruction was inapplicable for the reason that the doctrine of *respondeat superior* could not be invoked with reference to the defendant Foresters for the reason that the undisputed evidence showed that the Court of Foresters had for the time being loaned to the Phoenix Lodge the two employees above named, who thereafter for the time named were under the exclusive control and pay of the Phoenix Lodge whose temporary servants they thus became. But negligence in operation was not the sole question submitted. There was also the question as to whether or not the injury had been proximately caused by the negligence of one or both of the defendants due to the defective condition of the dipper. Evidence of its limited ownership, construction, maintenance and leasing by the defendant Foresters had been introduced. Testimony had also been introduced to the effect that at the time of the accident there was no handrail or safety device on the side of the car on which the plaintiff was riding. There was also testimony that in rounding a curve the car jerked with sufficient violence to throw the plaintiff out of the same, causing the injury of which she complains. Whether or not this was due to defective construction, to

subsequent impairment or to faulty operation of the railway were proper questions to be considered by the jury in fixing responsibility for the accident. This evidence, together with evidence, however slight, as to any right or duty of supervision over the property retained by the Foresters, formed a sufficient basis for the instruction. This disposes of the two exceptions presented by the Foresters.

Exception number 1 of the Phoenix Lodge is to the overruling of its demurrer. The complaint as above set forth characterizes the two defendants as "eleemosynary corporations." This it does by way of recital. Whether or not it correctly so characterizes them we need not now consider. In any event, the complaint clearly shows that the enterprise in which they were engaged at the time of the accident and out of which the accident arose was one of profit and not in a legal sense eleemosynary. In the above circumstances it is unnecessary for us to decide whether in this jurisdiction an eleemosynary corporation, generally or within limitations, is exempt from responsibility for the torts of its agents. Whatever the rule may be in that respect "the exemption of a charitable institution from liability for torts does not extend to torts arising in the course of work not connected with the charity." 11 C. J. 375, and cases cited in footnote 2. The demurrer of the Phoenix Lodge was properly overruled.

The same defendant's exception number 2 is disposed of by our ruling upon the Foresters' exception number 1. Phoenix Lodge's exception number 3 is not presented. Its exception number 4 is to the overruling of its motion for a nonsuit at the close of plaintiff's case and to the overruling of its motion for a directed verdict at the close of the case. These motions were based upon three grounds, namely: "(1) that there was no proof of negligence on the part of this defendant; (2) that there was no proof of

anything unusual that had occurred in the operation of the dipper; and (3) that there was no proof of any specific act of negligence on the part of this defendant." There was proof that a safety device was missing from the dipper at the time of the accident and proof of a jerking of the car, so violent and so unusual as to throw to the ground one of its occupants. This proof, together with other circumstances hereinabove recited, was sufficient to warrant the court in submitting to the jury the question of the last named defendant's negligence in the premises.

The case has been submitted upon briefs. In the briefs of the last named defendant its exception number 5 to the giving and refusal of certain instructions is referred to but is not argued and it is therefore deemed to have been abandoned. Under the rule heretofore repeatedly announced it will not be noticed. See *Estate of Afong,* 26 Haw. 147; *Stewart* v. *Spalding,* 26 Haw. 162; *Calhau* v. *Santo Antonio Soc.,* 26 Haw. 342; *Akana* v. *Territory,* 22 Haw. 479; *Republic* v. *Ah Yee,* 12 Haw. 169.

Under the Phoenix Lodge's exception number 11 to the court's refusal to grant its motion for a new trial is argued one ground only, namely, number 6, to the effect that the damages awarded by the jury were excessive. There was testimony to the effect that the accident resulted in an injury to plaintiff's head which caused her to lose consciousness which she did not regain while she was under examination at the Emergency Hospital and until half an hour after she had been taken thence to the Queen's Hospital for treatment; and there was testimony to the further effect that because of her injury the plaintiff remained in the Queen's Hospital from January 2 until January 6 and then spent another week in bed and three months at home; that the injury had rendered her "lolo" and had necessitated taking her from school to which, although she was less than sixteen years of age at the time

of the accident, she has never been returned. In view of this testimony, taken in connection with other evidence in the case hereinabove recited, we cannot say as a matter of law that the verdict for damages in the sum of $6000 was excessive or that the court erred in refusing defendant's motion, based upon the ground hereinabove stated, for a new trial.

The exceptions are overruled.

*O. P. Soares* for plaintiff.

*C. B. Dwight* for Honolulu Lodge No. 1, Modern Order of Phoenix.

*R. J. O'Brien* for Court Lunalilo No. 6600, Ancient Order of Foresters, etc.

### DISSENTING OPINION OF PERRY, C. J.

While concurring in the foregoing opinion in all other respects, I feel compelled to dissent on the subject of the admissibility of the testimony of the witness Bergin relating to the payment by the Phoenix Lodge to the Foresters of the sum of $450 for public liability insurance. The evident purpose of the plaintiff in calling Bergin to the stand was to prove the existence of the relationship of lessor and lessee between the two associations. The written contract was unavailable. The testimony to the effect that the Phoenix Lodge obtained a lease from the Foresters of the dipper and other property and paid therefor a consideration of $2000 sufficiently established that relationship. The statement, which was objected to *in limine,* that the Phoenix Lodge also paid $450 to secure public liability insurance was unnecessary to the proof of the plaintiff's case, was immaterial and was prejudicial to the defendants. The testimony given by Bergin was at least susceptible of the inference that, the $450 having been paid for that purpose, the Foresters did actually secure public liability insurance which would protect both de-

750

fendants against any verdict that might be obtained against them by the plaintiff or by anyone else using the dipper or other devices at Waikiki Park. The jury may well have so understood the testimony.

In my opinion a new trial should be granted.