# TERRITORY OF HAWAII *v.* HOY CHONG.

ERROR TO DISTRICT MAGISTRATE OF HONOLULU.

ARGUED FEBRUARY 16, 1912.          DECIDED FEBRUARY 19, 1912.

ROBERTSON, C.J., DE BOLT, J., AND CIRCUIT JUDGE COOPER
IN PLACE OF PERRY, J.

FISH—*close season for amaama.*

The preservation of fish is within the proper domain of the police
power. The legislature may provide by statute for a close season
for the protection of *amaama* notwithstanding the declaration con-
tained in section 95 of the Organic Act.

SAME—*sale of fish taken from a private pond.*

The prohibition against selling *amaama* during the close season
contained in Act 110, Laws of 1911, will apply to fish taken from
a private pond unless it is made to appear that there is no passage-
way connecting such pond with the sea, or other waters, through
which *amaama* may pass. The sale of *amaama* taken from pri-
vately owned ponds during the close season may be prohibited if
such prohibition is found to be necessary in the endeavor to pro-
tect the *amaama* of the sea waters of the Territory.

CONSTITUTIONAL LAW—*invalidity of portion of statute.*

The invalidity of a portion of a statute will not defeat the whole
act if the unobjectionable part is separable, complete and capable
of enforcement.

OPINION OF THE COURT BY ROBERTSON, C.J.

The charge upon which the plaintiff-in-error was tried and
convicted in the court below was that he "did at Honolulu,
city and county of Honolulu, Territory of Hawaii, during one
week last past prior to and including the 29th day of Decem-
ber, A. D. 1911, unlawfully and wilfully expose and offer for
sale certain fish known as amaama, contrary to Act 110, Laws
of the Territory of Hawaii, Session of 1911."

The first section of the act in question provides, "That it
shall be unlawful for any person to fish for or take, or to be
engaged in the fishing for or taking from any of the waters
within said Territory, except as hereinafter provided, amaama,

during any time from December 1st to March 1st, inclusive, in any year. And it shall likewise be unlawful for any person to expose or offer for sale, to have in possession for the purpose of exposing or offering for sale any amaama, during or within any of the times stated in this section; provided, however, that the prohibition of this section against the fishing for or taking of amaama shall not extend or be applicable to the owners or lessees of enclosed fish ponds privately owned."

The defendant demurred to the charge on the grounds that the statute is ambiguous, unintelligible, uncertain and indefinite; is contrary to the Fifth and Fourteenth Amendments to the Constitution, and is class legislation; also that it is contrary to section 95 of the Organic Act of Hawaii. The demurrer was overruled.

The testimony showed that the defendant, at the time and place alleged in the charge, exposed for sale and sold *amaama;* that they were "pond" *amaama* from the Maunalua fish pond, which pond is privately owned by the Bishop Estate; that *amaama* do not propagate in ponds; that the young *amaama* in privately owned ponds are collected at the outlets known as *makahas* and then put into the ponds where they grow, and from which they are subsequently taken for the market.

The three principal points made by counsel for the plaintiff-in-error are that Act 110 of the Laws of 1911 is contrary to that provision of the Organic Act (Sec. 95) which declares that, subject to vested rights, all fisheries in the sea waters of the Territory, not included in any fish pond or artificial inclosure shall be free to all citizens of the United States; that the act constitutes class legislation in violation of the first section of the Fourteenth Amendment, in that it discriminates against persons who are not the owners or lessees of enclosed fish ponds privately owned by excepting those mentioned from the provision against fishing or taking fish during the close season; and that the act violates the Fifth Amendment in that by prohibiting the sale of *amaama* within the period stated it

amounts to a taking of the property of the owners of private fish ponds in which *amaama* are kept without due process of law.

We will take up the points in the order stated, and, first, as to the alleged conflict of the statute with the Organic Act. The object of the statute is well stated in the title to be "To provide a close season for the protection of the fish known as amaama." In *Lawton* v. *Steele,* 152 U. S. 133, it was said that the preservation of game and fish has always been treated as within the proper domain of the police power, and laws prescribing the time and manner in which fish may be caught have been repeatedly upheld by the courts; and that the duty of preserving the fisheries of a State from extinction, by prohibiting exhaustive methods of fishing, or the use of such destructive instruments as are likely to result in the extermination of the young as well as the mature fish is as clear as its power to secure to its citizens, as far as possible, any other wholesome food. In *People* v. *Bridges,* 142 Ill. 30, 41, the court said: "The power of the legislature to pass laws for the protection and preservation of fish in the waters of the State has been so frequently exercised in this and other States, and such exercise has been so long and so uniformly acquiesced in, that the existence of the power, at the present day, is scarcely open to question."

We hold that a statute having for its object the protection of *amaama,* a valuable food fish, and providing to that end a reasonable close season (and it is not contended that the months of December, January and February constitute an unreasonable close season for *amaama*) is a legitimate exercise of the police power, and within the grant of legislative power contained in section 55 of the Organic Act, and does not conflict in any way with the declaration contained in section 95 of that act. In other words, the declaration that the sea fisheries of the Territory shall be free to all citizens of the United States was not intended to curtail the right of the legislature to enact

laws in the interest of the public for the protection and preservation of those fisheries.

In connection with the second point raised as above stated, an interesting discussion has been had as to the proper construction to be placed upon the language of the act relating to fishing and the taking of fish. On behalf of the Territory it is argued that the proviso found in the first section of the statute was intended merely to allow the owners and lessees of private ponds to take from their ponds fish for their own use; that the language of the statute is capable of being construed in accordance with such intention; and that such a construction would obviate the alleged discrimination against the taking of fish from the public waters by persons other than the owners and lessees of privately owned ponds. Counsel for plaintiff-in-error claims that the language of the statute is too plain and clear to permit of construction; that the language was used advisedly; and that the intention of the legislature was to exempt the owners and lessees of private ponds from the prohibition against taking fish from the sea waters during the propagating season in order to enable them to stock their ponds with young *amaama* taken from the sea during that season. It appears to us, however, that as the plaintiff-in-error was not put on trial upon a charge of fishing or taking fish from the sea waters in the close season he is not in a position to urge the invalidity of the statute upon the ground advanced. His rights in this case are in no way affected by the alleged discrimination, if it does exist. See *In re Craig,* 20 Haw. 483, 490. ·

The statute seeks to protect the fish by prohibiting the taking of them and by forbidding the sale of them. We regard the two things as so independent and separable that if for any reason the prohibition against the taking of fish should not be operative the other against selling them might still be effective. Where the legislature has endeavored to accomplish a purpose by two distinct means the failure of one by reason

of constitutional objections ought not to defeat the operation of the other. See *In re Fernandez,* 12 Haw. 120.

"It is only when different clauses of an act are so dependent upon each other that it is evident that the legislature would not have enacted one of them without the other—as when the two things provided are necessary parts of one system—that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected." *Huntington* v. *Worthen,* 120 U. S. 97, 102. If, after striking out the unconstitutional part of a statute, the residue is intelligible, complete, and capable of execution, it will be upheld and enforced, except, of course, in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder." *Scott* v. *Flowers,* 61 Neb. 620, 623. There is no reason for supposing that the legislature would not have prohibited the sale of *amaama* during the propagating season had it been informed that it could not discriminate between owners or lessees of private ponds and others as to the taking of *amaama* from the sea waters of the Territory.

The remaining question is as to the validity of the enactment against the selling of *amaama* as applied to those taken from private ponds. The legislature has the power to regulate the time and manner of taking or selling fish whenever the public interests require such regulation, even though the use of private property may be thereby restricted to some extent. A pond which has neither outlet nor inlet through which fish can pass is the private property of its owner; the public have no interest in it, and a statute prohibiting certain methods of taking fish does not apply to such a pond. *People* v. *Conrad,* 125 Mich. 1; *State* v. *Roberts,* 59 N. H. 256. But the legislature, in the endeavor to protect a certain species of fish, may prohibit the sale of all such fish during a close season, and such prohibition may apply to fish taken from privately owned ponds. In the case of *Commonwealth* v. *Gilbert,* 160

Mass. 157, it was held that on a charge of selling dead trout during the close season, the accused was not entitled to show in defense that the fish he had sold were artificially propagated, raised and maintained by himself in artificial ponds on his own premises. The court there said: "In order to make the protection of trout more effectual, it was deemed necessary by the legislature to punish the sale, during the close season, of all trout except those which are alive. This was probably on account of the difficulty of distinguishing between trout which had been artificially propagated or maintained and other trout." For a similar reason it has been held that under statutes making it an offense to have in possession game animals or birds at certain times of the year it is no defense that the game was not killed within the state, but was brought in from elsewhere. The idea being that the statute could be easily evaded and rendered ineffectual if it were necessary to prove the time and place of the taking or killing of the game, and there being no way to distinguish it. *Javins* v. *United States,* 11 App. Cas. D. C. 345; *Ex Parte Maier,* 103 Cal. 476.

In this case it is urged on behalf of the defendant that mullet raised in ponds are distinguishable from sea mullet. The testimony given in the court below was very meager. The prosecution called only one witness and the defendant none. The witness (a fish inspector at the Honolulu market) said on direct examination, "there is some difference between sea mullet and pond mullet," and on cross-examination he said, "you can tell the difference between pond and sea mullet." What the difference in the appearance of the two classes of *amaama* is was not explained, nor was it made to appear whether the two kinds are readily distinguishable by the ordinary observer, or is to be noted with difficulty only by the accustomed eye of an expert. The offering for sale of *amaama* by the accused in violation of the statute having been shown, the burden was upon him to produce evidence of any special facts that he relied on to show that the transaction was not within the

purview of the statute, or that the statute as applied to such facts was an unreasonable regulation and as such void. Otherwise stated, if the accused intended to rely on the fact, if it be a fact, that the difference between pond mullet and sea mullet is to be easily and readily seen, and that the legitimate protection of sea mullet would not justify the prohibition of the sale of all mullet during the close season it was incumbent upon him to show it. He did not do so.

The fact given in evidence that *amaama* do not propagate in ponds is made use of by both sides. The prosecuting attorney contends that the fact that private ponds must be regularly replenished with young fish from the sea waters gives the public an interest in the protection of those fish when they mature. Counsel for the plaintiff-in-error claim that the fact that *amaama* confined in a pond will not spawn renders the preservation of pond mullet unnecessary, and that the object of the statute—the protection of sea *amaama* during the spawning season—does not apply. The fact that pond mullet do not spawn would have afforded a strong reason for holding that the statutory prohibition could not apply to that class of mullet if it had been made to appear that the two classes are readily distinguishable, and also that the pond in question had no connection with the sea through which the mullet could pass. The public has an interest in the fish in ponds which are so connected with other waters, and statutes regulating the taking and selling of fish apply to the fish in such ponds. *People* v. *Bridges,* supra; *People* v. *Horling,* 137 Mich. 406. The witness testified that the pond from which the *amaama* in question were taken "is privately owned," and he testified generally that "the young mullet in these private ponds are collected at the outlets known as *makahas* and then poured into the ponds." But there was no testimony tending to prove that the pond in question is so situated or so operated that *amaama* cannot pass to and fro between the pond and the sea.

Territory v. Hoy Chong, 21 Haw. 39.

For the reasons indicated the judgment of the district magistrate is affirmed.

*J. L. Coke* (*Douthitt & Coke* on the brief) for plaintiff-in-error.

*J. W. Cathcart, City and County Attorney,* for defendant-in-error.