TERRITORY *v.* CLEMENTE V. REYES, CORNELIO R. GOROSPE, MAGDALENA L. REYES AND PETRA V. LIGOT.

Nos. 2123, 2124 and 2125.

ARGUED AUGUST 14, 1934.               DECIDED OCTOBER 19, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

The four defendants above named were indicted in each of the three cases above indicated for an alleged violation of Act 252, L. 1931, designated the "Uniform Sale of Securities Act." In each case demurrers were interposed to the indictment and were overruled by the trial court. The cases are before us upon interlocutory exceptions to the orders overruling said demurrers and are consolidated, by stipulation, for purposes of briefing, argument and decision in this court. The indictment in case No. 2123 charges as follows: "The grand jury of the first judicial circuit of the Territory of Hawaii do present that Clemente V. Reyes, Cornelio R. Gorospe, Magdalena L. Reyes and Petra V. Ligot at the City and County of Honolulu, Territory of Hawaii, and within the jurisdiction of this honor-

able court, on the 2nd day of April, 1932, did unlawfully and feloniously sell and deliver to Jose Talbo, for the sum of one hundred dollars ($100.00), lawful money of the United States of America, certain securities issued by Haphil and Company, Limited, a corporation organized and existing under the laws of the Territory of Hawaii, to-wit, one share of the capital stock of the said Haphil and Company, Limited, the said capital stock of said Haphil and Company, Limited, then and there not being registered with and in the office of the commissioner of securities of the Territory of Hawaii, contrary to the form of the statute in such case made and provided."

The indictment in case No. 2124 is similar to the foregoing, the only difference being that it alleges a sale to a different person, namely, Candido Magaling, and for a different amount, namely, $300.

The indictment in case No. 2125 contains two counts and charges as follows: *"First count.* The grand jury of the first judicial circuit of the Territory of Hawaii do present that Clemente V. Reyes, Cornelio R. Gorospe, Magdalena L. Reyes and Petra V. Ligot at the City and County of Honolulu, Territory of Hawaii, and within the jurisdiction of this honorable court, on the 2nd day of April, 1932, being then and there dealers engaged in the business of selling securities, as such dealers did unlawfully and feloniously sell to the following named persons certain securities issued by Haphil and Company, Limited, a corporation organized and existing under the laws of the Territory of Hawaii, to-wit, three shares of the capital stock of said Haphil and Company, Limited, to Candido Magaling for the sum of three hundred dollars ($300.00), lawful money of the United States of America, one share of the capital stock of the said Haphil and Company, Limited, to Jose Talbo for the sum of one hundred dollars ($100.00) and other shares of the capital stock of the said

Haphil and Company, Limited, to each of sundry and divers other persons whose names are to the grand jury unknown, the said Clemente V. Reyes, Cornelio R. Gorospe, Magdalena L. Reyes and Petra V. Ligot not being then and there registered and not first having registered as dealers in securities in the office of the commissioner of securities of the Territory of Hawaii, contrary to the form of the statute in such case made and provided. *Second count.* And in order to set forth the unlawful and felonious acts of the said Clemente V. Reyes, Cornelio R. Gorospe, Magdalena L. Reyes and Petra V. Ligot with reference to the sale of the securities mentioned in the first count hereof, in different form and count, in order to meet the proof, the grand jury aforesaid do further say and present that Clemente V. Reyes, Cornelio R. Gorospe, Magdalena L. Reyes and Petra V. Ligot at the City and County of Honolulu, Territory of Hawaii, and within the jurisdiction of this honorable court, on the 2nd day of April, 1932, being then and there agents and salesmen employed, appointed and authorized by the Haphil and Company, Limited, a corporation organized and existing under the laws of the Territory of Hawaii, to sell securities issued by said Haphil and Company, Limited, as such agents and salesmen, did unlawfully and feloniously sell to the following named persons certain securities issued by said Haphil and Company, Limited, to-wit, three shares of the capital stock of said Haphil and Company, Limited, to Candido Magaling for the sum of three hundred dollars ($300.00), one share of the capital stock of the said Haphil and Company, Limited, to Jose Talbo for the sum of one hundred dollars ($100.00) and other shares of the capital stock of the said Haphil and Company, Limited, to each of sundry and divers persons whose names are to the grand jury unknown, without the said Clemente V. Reyes, Cornelio R. Gorospe, Magdalena L. Reyes and Petra V. Ligot first being registered and

without first having registered as such salesmen and agents in the office of the commissioner of securities of the Territory of Hawaii, contrary to the form of the statute in such case made and provided."

Two demurrers were filed in each case, one on behalf of Clemente V. Reyes, Magdalena L. Reyes and Petra V. Ligot and the other on behalf of Cornélio R. Gorospe. All are alike in substance. In the briefs all are treated as exemplified in the demurrer of Clemente V. Reyes, Magdalena L. Reyes and Petra Ligot to the indictment in case No. 2125. The grounds need not here be set forth *in extenso*. In the briefs they are epitomized under three divisions, to the following effect though not in the following order: (1) That the indictments contain no allegation that the stocks sold were required by law to be registered; (2) that the indictments are indefinite and uncertain and do not inform the defendants of the nature and cause of the accusation against them, and (3) that the penalty section (No. 17) of the Uniform Sale of Securities Act is uncertain, unconstitutional and void. These points will be considered in the order above enumerated.

(1) The indictments in cases 2123 and 2124 charged sales by the defendants of unregistered securities. Such sales are prohibited by section 6 of the Uniform Sale of Securities Act, which provides in part: "No securities except of a class exempt under any of the provisions of section 4 hereof or unless sold in any transaction exempt under any of the provisions of section 5 hereof shall be sold within this Territory unless such securities shall have been registered by notification or by qualification as hereinafter defined." Section 4 above referred to sets forth in eleven paragraphs, covering more than two pages, the list of the "exempt securities" referred to in paragraph 6, and section 5 sets forth a slightly shorter list of the "exempt transactions" therein referred to. Section 13

of said Act provides as follows: "It shall not be necessary to negative any of the exemptions in this Act provided in any complaint, information, indictment or any other writ or proceedings laid or brought under this act and the burden of establishing the right to any such exemption shall be upon the party claiming the benefit of such exemption and any person claiming the right to register any securities by notification under section 7 of this act shall also have the burden of establishing the right so to register such securities."

The principle of law set forth in section 13 above quoted and which is therein specifically applied to the Uniform Sale of Securities Act has for many years been in force in this Territory with reference to indictments generally. Section 4042, R. L. 1925, provides as follows: "No indictment for any offense created or defined by statute shall be deemed objectionable for the reason that it fails to negative any exception, excuse or proviso contained in the statute creating or defining the offense. The fact that the charge is made shall be considered as an allegation that no legal excuse for the doing of the act existed in a particular case." The principle had been earlier recognized at common law. "It was the common-law rule that where an exception or qualification is in a separate section of the statute or in a proviso which is distinct from the enacting clause, it is a matter of defense which the prosecution need not anticipate in the pleadings. * * * In the absence of constitutional restrictions it is within the legislative power to prescribe the requirements of pleadings in criminal as well as civil cases." *Kreutzer* v. *Westfahl*, 204 N. W. 595, 601, 187 Wis. 463, 477.

Neither section 13, specifically, nor section 4042 above referred to, has been attacked by the defendants herein as unconstitutional or void. Under specific statutory enactment therefore it is unnecessary for the indictment here-

in to negative any of the eleven exceptions set out in section 4 or any of the nine exceptions set out in section 5 of the Uniform Sale of Securities Act. The mere fact that such exceptions are referred to generally in section 6 above quoted cannot change this result. This is in accordance with what has been held to be the rule even in the absence of statutes similar to our section 4042, R. L. 1925, and section 13 of the Uniform Sale of Securities Act. See 1 Wharton's Crim. Proc., § 288, citing among others the the leading case of *State* v. *Abbey,* 29 Vt. 60, 67 Am. Dec. 754. In that case, as set forth in the syllabus, it was held: "In indictment for bigamy, under section of statute which recites that certain acts shall amount to that offense 'except in the cases mentioned in the following section,' the exceptions contained in such section need not be negatived." Quoting from the text of the case last above cited (pp. 756-758) : "It is insisted that it should have been alleged in the indictment that the respondent was not within any of the exceptions mentioned in the act. This objection is urged as fatal to all the counts in the indictment. The Compiled Statutes, 560, sec. 5, provides that 'if any person who has a former husband or wife living shall marry another person, or shall continue to cohabit with such second husband or wife in this state, he or she shall, except in the cases mentioned in the following section, be deemed guilty of the crime of polygamy, and shall be punished,' etc. Section 6 then provides 'that the act shall not extend to any person whose husband or wife has been continuously beyond the sea or out of the state for seven years together, and the party marrying not knowing the other to be living within that time, nor to persons divorced, or when the marriage has by decree of the court been declared null and void, nor to persons when the former marriage was within the age of consent, and not afterwards assented to.' This question, and under this statute, was referred to in the case of *State* v. *Palmer,* 18 Vt. 573,

but left undecided. It was justly said in the case of *Smith* v. *Moore,* 6 Me. 274, that on this subject 'there seems to be many shadowy distinctions, the sound reason and good sense of which are not easily discoverable.' The general rule is thus given: 'If there is an exception in the enacting clause, the party must negative. the exception, and state in the indictment that the respondent is not within it; but if there be an exception in a subsequent clause, or subsequent section of the statute, it is a matter of defense, and is to be shown by the other party:' *State* v. *Palmer,* 18 Vt. 573; *State* v. *Barker,* Id. 197; *State* v. *Butler,* 17 Id. 149. The rule is founded on the general principle that the indictment must contain the statement of those facts which constitute an offense under the statute. A *prima facie* case must be stated; and it is for the other party for whom matter of excuse exists to bring it forward in his pleading or defense. In saying that an exception must be negatived when made in the enacting clause, reference is not made to sections of the statute as they are divided in the act; nor is it meant that because the exceptions are contained in the section containing the enactment it must for that reason be negatived. That is not the meaning of the rule. The question is, whether the exception is so incorporated with and becomes a part of the enactment as to constitute a part of the definition or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. 'It is the nature of the exception, and not its location,' which determines the question. * * * These rules are sustained by the authorities as they are collected in 8 Am. Jur. 233; and *Ex parte Barthelemy,* 1 Lead. Crim. Cas. 255, and note. It is said that there is a middle class of cases, namely, where the exception is not in express terms introduced into the enacting clause, but only by reference to some subsequent

clause, or prior statute; as where the words 'except as hereinafter mentioned,' or words of similar import, are employed; and that in those cases the exceptions must be negatived: *Ex parte Barthelemy,* 1 Lead. Crim. Cas. 260, note. The statute on which this indictment is framed has in the section of·its enactment a reference to the subsequent section for an enumeration of the cases to which the act does not extend. This case would seem to fall within that classification. The necessity in such cases of negativing the exceptions in the indictment cannot arise from the mere fact that a reference to the excepted cases is made in the section containing the enacting clause." See also *Commonwealth* v. *Boyle,* 165 Atl. (Pa.) 521, 522, and *People* v. *Main,* 242 Pac. (Cal.) 1078, 1079. From the foregoing we conclude that the indictments in the cases at bar were not demurrable upon the grounds discussed in this division.

(2) The grounds of demurrer considered under the foregoing division No. 1 apply to the indictments in cases 2123 and 2124. The division which is herein for convenience designated No. 2 deals more specifically with the indictment containing two counts in case 2125.

Count number one of the indictment last above named in effect charges sales of securities by the defendants, as dealers therein, without said defendants having first registered as such dealers, and count number two charges said sales by defendants as salesmen and agents of Haphil and Company, Limited, without prior registration of the defendants as such salesmen and agents; all contrary to statutory enactment. The section of the Uniform Sale of Securities Act which is applicable in the premises is section 11, which provides in part as follows: "No dealer or salesman shall engage in business in this Territory as such dealer or salesman or sell any securities including securities exempted in section 4 of this act, except in trans-

actions exempt under section 5 of this act, unless he has been registered as a dealer or salesman in the office of the commissioner pursuant to the provisions of this section." The terms "dealer" and "salesman" are specifically defined by paragraphs 4 and 6 respectively of section 1 of the Uniform Sale of Securities Act; and paragraph 8 of said section 1 provides that " 'agent' shall mean salesman as herein defined." Defendants urge that alleging the mere conclusion that they were dealers, salesmen and agents was not sufficient but that the facts upon which such conclusion was based should have been set forth in the indictment; and in support of the above stated construction defendants cite the following cases: *Gutterson* v. *Pearson*, 152 Minn. 482, 189 N. W. 458; *State* v. *Summerland*, 150 Minn. 266, 185 N. W. 255, and *Wisniewski* v. *State*, 189 N. W. (Wis.) 142. None of the foregoing cases sustains defendants' contention. *Gutterson* v. *Pearson*, *supra*, was a proceeding for an injunction and not a criminal case. It was not concerned with the averments required in an indictment but with a construction of the Minnesota Blue Sky statutes of 1917 and 1919 as applied to facts fully set forth in the complaint.

In *State* v. *Summerland*, *supra*, the indictment was held by a divided bench to be insufficient in its allegation of the capacity in which the defendants acted. It is true that the defendants were therein alleged to be dealers, but as was stated in the opinion of the court (pp. 256, 257): "It is not alleged in what commodities they were dealers and we hold that the alleging of a single transaction is not sufficient to show that they were dealers in investment securities within the meaning of the statute." In the instant case the indictment alleges that the defendants were "dealers engaged in the business of selling securities" and furthermore that "as such dealers" they sold the securities named to Magaling, Talbo and divers other persons.

These two allegations differentiate count number one of the indictment in case 2125 from the indictment under consideration in *State* v. *Summerland, supra.* In a later Minnesota case, namely, *State* v. *Ogden,* 191 N. W. (Minn.) 916, the full bench decided, as summarized in paragraph two of the syllabus: "An indictment charging that the defendant sold to a person named 'and others certain investment contracts issued by him without first having obtained a license' he 'being engaged in business within the state of Minnesota of selling investment contracts issued by him,' sufficiently alleges a prohibited sale, and that such sale was not an isolated or single transaction excepted from the penalty of the statute."

*Wisniewski* v. *State, supra,* was cited to support defendants' contention that the indictments herein considered were insufficient for failure to allege that the shares sold were not privately owned by the defendants. This point has already been decided contrary to defendants' contention in our discussion of the subject of negativing exceptions and exemptions. See also *People* v. *Main, supra,* for a like decision upon similar facts. *Wisniewski* v. *State* is not in conflict with the decisions last above referred to. The amended information in the case last above cited charged directly that the defendant "was not the owner of said stock" and no question of its insufficiency for failure of that averment was before the Wisconsin court or decided by it. What the Wisconsin court did decide was that the conviction of the defendant could not be sustained on the ground that he was a broker or agent because of the failure of allegation and proof that he was a broker or agent. The information contained no averment in this particular either by way of conclusion or in statement of facts.

Count two of the indictment in case 2125 alleges defendants' capacity and actions as salesmen and agents in

the following language: "Being then and there agents and salesmen employed, appointed and authorized by the Haphil and Company, Limited, * * * to sell securities issued by said Haphil and Company, Limited, as such agents and salesmen, did * * * sell * * * certain securities issued by said Haphil and Company, Limited, to-wit * * * ." These allegations, like those in count one, follow the language of the statute and charge that the capacity and actions of the defendants in the premises were as salesmen and agents with all the particularity required by section 4048, R. L. 1925. Each count sufficiently informs the defendants of the nature and cause of the accusation against them. The following language quoted from *State* v. *Williams*, 151 S. E. (W. Va.) 852, 853, is applicable in the premises: "It is urged, as a basis for the demurrer, that the indictment should have stated the connection in which the terms 'dealers,' 'salesmen,' 'agents,' and 'officers,' are applied to the defendants and the particulars of the alleged scheme or artifice to defraud. As the indictment, in our opinion, is in substantial compliance with the statutory form, the question remains as to whether it is sufficient under section 14, art. 3, of the state Constitution, requiring that the accused shall be fully and plainly informed of the character and cause of the accusation against him. 'While the Constitution declares that he (the accused) shall be fully and plainly informed of the character and cause of the accusation, it does not require that he shall be fully and plainly informed of the mode, or manner by or in which the crime was committed.' *State* v. *Schnelle*, 24 W. Va. 767, 778. The constitutional requirement is satisfied if the accusation is sufficiently specific, fairly to apprise the accused of the nature of the charge against him, so that the record may show, as far as may be, for what he is put in jeopardy." See also *People* v. *Love*, 142 N. E. (Ill.) 204, 207; *State* v. *Ogden, supra.*

We conclude that the grounds of demurrer considered in this division are not well taken.

(3) We come now to defendants' claim that the penalty section of the Uniform Sale of Securities Act is "uncertain, unconstitutional and void." In their briefs, in arguing this specific point, defendants suggest the unconstitutionality of the Act as a whole but do not aver definitely the articles or provisions of the Constitution violated nor except as hereinafter set forth the particulars wherein they are violated nor do they cite any authorities directly in point or applicable by analogy. Referring to Blue Sky laws generally the editors of A. L. R., in a cumulative annotation on page 45, Vol. 87 of their reports published in 1933, say: "All question as to the validity of legislation of this kind, so far as the provisions of the Federal Constitution are concerned, was put at rest in Hall v. Geiger-Jones Co. (1917) 242 U. S. 539, 61 L. ed. 480, 37 S. Ct. 217, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643 (reversing [1916; D. C.] 230 Fed. 233) (Ohio act)," and other cases referred to in the annotation. In cases therein cited it has been held that such legislation is a reasonable exercise of the police power (*Merrick* v. *N. W. Halsey & Co.,* 242 U. S. 568), that it is not in violation of the equal protection clause of the Federal Constitution (*Barnhill* v. *Young,* 46 Fed. [2d] 804), that it does not impair the obligation of contracts (*Commonwealth* v. *Moore,* 5 Pa. D. & C. 738), and that it does not deprive the accused of the right to be informed of the nature and cause of the accusation against him. (*State* v. *Williams,* 108 W. Va. 525, 151 S. E. 852.)

In the instant case only the specific questions raised and argued will be considered. The penalty section (No. 17) of our Act provides as follows: "Whoever violates any provision of this Act shall be punished by a fine of not more than Five Thousand Dollars or by imprisonment for

not more than three years, or by both such fine and imprisonment; but an affirmative showing that an act or omission which constituted a violation occurred in good faith and on reasonable grounds for believing it not to be a violation, shall relieve from the penalty prescribed in this section." The above-quoted section is an exact copy of the Uniform Sale of Securities Act finally adopted, after seven years' consideration, at the national conference of commissioners on uniform state laws at its meeting at Memphis, Tennessee, October 14-19, 1929, and later approved by the American Bar Association. Modifications of the Uniform Act, not including the provisions of section 17 above set forth, were adopted by Michigan and Alabama. The Act as a whole, with only slight modifications, was adopted in 1931 by Hawaii and Florida, section 17 remaining unchanged in Hawaii, and being changed in Florida only as to the amount of fine and length of imprisonment provided. The Uniform Sale of Securities Act, as drafted by the commissioners and approved by the American Bar Association, served in a large measure as a model for the Federal Securities Act of 1933, and many of its provisions were adopted in the Federal Act. Section 17 of the Uniform Act, however, was entirely rejected by Congress, which enacted in lieu thereof a provision making wilfulness a necessary ingredient of the offense and omitting the proviso that an affirmative showing of good faith would relieve the defendant from the penalty prescribed. A provision somewhat similar to section 17 above quoted is found in the penalty clause of the Federal Securities Exchange Act of 1934. Section 78ff of that Act provides fine and imprisonment, or either, for wilful violation of the Act or of any rule or regulation thereunder, with the following proviso: "But no person shall be subject to imprisonment under this section for the violation of any rule or regulation if he

proves that he had no knowledge of such rule or regulation."

Arguments, except in the instant case, as to the validity or invalidity of penalty clauses containing the provisos above referred to are not presently available and no such clause, so far as we are apprised, has been made the subject of a judicial decision. The defendants' attack on section 17 is based upon the uncertainty of its provisions. The question of the uncertainty of a statutory provision when properly raised and applied presents, as defendants assume in the case at bar, a problem in constitutional law. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally* v. *General Construction Co.,* 70 L. Ed. 322, 269 U. S. 385. (The foregoing quotation is from the L. Ed. syllabus.) In the instant case, however, there is no uncertainty in the statute in prohibiting the acts charged against the defendants in the indictments or in providing a penalty therefor. The uncertainty, if any, arises as to the procedure to be followed under the proviso in section 17 following the semicolon, to-wit: "But an affirmative showing that an act or omission which constituted a violation occurred in good faith and on reasonable grounds for believing it not to be a violation, shall relieve from the penalty prescribed in this section."

At the present time the construction to be placed upon that proviso is not at issue and has not been argued and it does not yet appear that the defendants come within its provisions. As yet there has been no showing and no attempt to show that the acts and omissions charged against the defendants occurred in good faith or on reasonable grounds for believing them not to be in violation of the statute. The objection that a statute is too vague to be

valid is available only to one whom it concerns. Thus in *United States* v. *Wurzbach,* 280 U. S. 396, 399, Mr. Justice Holmes in delivering the opinion of the court said, with reference to defendant's claim that the Federal Corrupt Practices Act in certain aspects was too vague to be valid: "It is said to be uncertain which of several sections imposes the penalty and therefore uncertain what the punishment is. That question can be raised when a punishment is to be applied." Again, in *Bandini Petroleum Co.* v. *Superior Court,* 284 U. S. 8, 22, 78 A. L. R. 826, 834, Chief Justice Hughes, speaking for the court, said: "Constitutional questions are not to be dealt with abstractly. * * * Upon the trial, all questions of fact and of law relevant to the application and enforcement of the statute may· be raised and every constitutional right which these appellants may have in any aspects of the case as finally developed may be appropriately asserted and determined in due course of procedure."

Upon reason and the authorities above cited it is un-. necessary at this stage of the case to pass upon the constitutionality or unconstitutionality, the validity or invalidity of section 17 of our Uniform Sale of Securities Act in the particulars above set forth. ˙The rule repeated by this court in *Schoening & Co.* v. *Miner,* 22 Haw. 196, 202, 203, therefore applies, namely, "that courts will not pass upon the validity of a statute in any case unless it is necessary to a decision of the case so to do."

One of the few particulars wherein our Act differs from the Uniform Act drafted by the commissioners is in the addition of paragraph (k) to section 4, which sets forth the exempt securities referred to in the Act. Paragraph (k) of section 4 of our Act is as follows: "Stocks or bonds of corporations organized and existing under and by virtue of the laws of the Territory of Hawaii, which corporations were so organized and existing on the first

day of January, 1931." Defendants suggest in their reply brief that the foregoing exemption is discriminatory, unconstitutional and violative of section 55 of the Organic Act which prohibits special or exclusive privilege, immunity or franchise without the approval of Congress.

The grounds of defendants' demurrers to the indictments herein are set forth in nine numbered paragraphs.

Paragraphs one to seven inclusive deal with alleged defects in the indictments themselves and paragraphs eight and nine aver the unconstitutionality of Act 252, L. 1931, as a whole. The ground of demurrer averred in paragraph one is "that said indictment does not set forth facts sufficient to constitute any offense against the laws of the Territory of Hawaii." This ground does not present the question as to whether or not the exemption set forth in paragraph (k) of section 4 of our Uniform Sale of Securities Act is discriminatory, unconstitutional and violative of section 55 of the Organic Act. *Republic Rubber Co.* v. *Adams,* 213 S. W. (Mo.) 80, 81, is in point. In that case the plaintiff filed what the court held to be "a plain general demurrer to one of the defenses interposed by the defendant." The court held that "the constitutionality of the Missouri laws is not involved in this case, under the pleadings. The answer specifically pleads the statutes relied upon as a defense, and this portion of the answer is attacked by the general demurrer above quoted. If by the demurrer it was intended to strike at the constitutionality of the statutes pleaded, then the constitutional provisions (either state or federal) should have been pointed out by the pleadings filed after the answer was filed. This was not done, so that the constitutionality of the statutes is not challenged." See also *Newell* v. *Franklin,* 74 Atl. (R. I.) 1009; *Grenada Lumber Co.* v. *State,* 54 So. (Miss.) 8; *Western Railway of Alabama* v. *Foshee,* 183 Ala. 182, 62 So. 500; *Commercial Bank of Athens* v. *Blassingame,* 95

S. E. (Ga.) 222; *City of Atlanta* v. *Standard Life Ins. Co.,* 101 S. E. (Ga.) 122.

Paragraph eight of said demurrers avers: "That Act 252 of the Session Laws of Hawaii 1931, the statute sought to be enforced against these defendants is an unjust and unreasonable restraint upon their rights of contract and their personal liberty as guaranteed by the Constitution of the United States and the Organic Law of the Territory of Hawaii, and that it offers no standard for discrimination by enforcing officers by which they may be guided when to interfere and when not to interfere with the contractual rights of residents of the Territory of Hawaii, and that the lack of certainty in the Act and lack of any guiding direction therein, which can be unquestionably connected with criminal activity places the power of arbitrary oppression in the hands of police or enforcing agents, and this is particularly true, in that, the penalty provided leaves the matter in the enforcing agent's hands to determine the good faith or reasonable ground of a citizen, and is not of sufficient certainty to meet the constitutional requirements of contract and personal privileges and liberty." Paragraph nine of said demurrers is as follows: "That said Act 252 is unconstitutional and void and has no just or reasonable relation to the things generally comprehended within the police power of the Territory of Hawaii." None of the grounds set forth in paragraphs eight and nine above quoted presents the question in constitutional law affecting the validity of paragraph (k) of section 4 of our Uniform Sale of Securities Act, suggested in defendants' reply brief as above set forth. Paragraphs two to seven, inclusive, herein discussed in other groupings are obviously not in point. The question not being presented by the demurrers or by exception to the order overruling the same, will not be considered.

In their reply brief defendants say: "The new Fed-

eral Act, from its reported form, clearly supersedes the Territorial Act and prosecutions under our local law would be void. This Act should be available at an early date." Defendants' reply brief is dated February 8, 1934. No Federal Act, so far as we are advised, not then available covers the subject of our Uniform Sale of Securities Act.

On the concluding page of defendants' opening brief it is stated that the indictments affirmatively show that they are "bad for misjoinder and duplicity, grounds contained in the demurrer and urged upon the court below, and now upon this court." Nothing further in the briefs or in oral argument has been offered in amplification of this attack made upon the indictments. For the reason that these grounds have not been argued, under the rule heretofore repeatedly announced, they are deemed to have been abandoned and will not be noticed. *Luhi* v. *Phoenix Lodge*, 31 Haw. 740, 748; *Estate of Afong*, 26 Haw. 147; *Stewart* v. *Spalding*, 26 Haw. 162, *Calhau* v. *Santo Antonio Society*, 26 Haw. 342; *Akana* v. *Territory*, 22 Haw. 479; *Republic* v. *Ah Yee*, 12 Haw. 169.

For the reasons above set forth the interlocutory exceptions herein are overruled.

*C. E. Cassidy*, Assistant Public Prosecutor (*J. C. Kelley*, Public Prosecutor, with him on the brief), for the Territory.

*W. H. Heen* (*H. E. Stafford* and *L. LeBaron* on the briefs) for defendants.