STATE, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL, ET AL., RELATORS, v. ALBERT C. TILLEY, STATE ENGINEER, RESPONDENT.

288 N. W. 521

FILED NOVEMBER 18, 1939.   No. 30800.

*Walter R. Johnson, Attorney General, Clarence S. Beck, Don Kelley* and *Rush C. Clarke,* for relators.

*John S. Logan* and *Robert H. Downing,* for respondent.

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This is an original action of mandamus, which calls for the construction of certain language used by the legislature in the bill making appropriations for the state government for the current biennium.

The petition alleges that the relators are the attorney general and two of his assistants, and that the respondent is the state engineer; that, in said appropriation bill, the legislature provided a highway cash fund for the department of roads and irrigation, and that "not more than the sum of $9,200, to be expended *under the direction of* the attorney general and *subject to the approval* of the state engineer, for salaries and office maintenance in the office of the attorney general." Laws 1939, ch. 133, sec. 42. The petition further alleges that legal services were furnished to the department of roads and irrigation by the entire staff of lawyers, clerks, and stenographers in the attorney general's office, and that they performed all services during the month of July, 1939, required by said department; that each person on the staff of the attorney general's office is paid a regular salary; that the attorney general had directed the payment of the salary of the relator Beck in the

sum of $325 monthly and part of the salary of the relator Don Kelley in the sum of $8.33 monthly out of the funds so appropriated in consideration of services rendered by the attorney general and his staff for said department; that the relators presented to the respondent vouchers (on forms furnished by the respondent to the relators) for the month of July, 1939, for said salaries, upon which a direction of the attorney general was indicated, requesting the approval of the respondent; that the respondent refused to approve the same, giving as his reason that the office of the attorney general did not need the money, and that he would use it to build roads; that, when advised that he could not so use the funds, he informed the relators that he would let the appropriation lapse; that the respondent without good cause has refused to approve the vouchers. The petition further alleges that the office of the attorney general is maintained, as required by law, for the purpose of providing legal services to the various administrative branches of the state government, including the department of roads and irrigation. The petition further alleges that there is sufficient money in said fund to pay said vouchers. Petitioners pray for a peremptory writ of mandamus to compel the respondent to approve said vouchers, directing the payment of said salaries from said appropriation.

This court issued an alternative writ. Respondent in his answer admits the status of the parties, the passage of the appropriation act, the receipt and demand for approval of the vouchers; that he did not approve the vouchers, and that the attorney general's office provided legal services during the month of July for the department of roads and irrigation; and alleges that there was not submitted with said vouchers supporting information as to the time devoted to said services by the attorney general's office; that the relator Beck did not devote his full time to the department during that month, and that all of the services rendered by the attorney general's office to the department of roads and irrigation did not require the equivalent of the services of one full-time assistant to the attorney general;

that he has not approved, nor been asked to approve, the arbitrary arrangement or apportionment of salaries made by the attorney general; and that he has demanded that, if any part of said fund is to be expended with his approval, such expenditure be limited to payment for services actually rendered to his department.

The respondent sets out the history of the appropriation bill, the amount of the appropriation made directly for the salaries and maintenance of the attorney general's office, the further fact that several appropriations carried for various departments of the state government were similarly limited to the approval of the head of the department, and that the legislature did not intend that the appropriation involved in this action would be used for the general purposes of salaries and maintenance of the attorney general's office.

The respondent further alleges that the appropriation act vests in the respondent, and not in the relator, the authority and the discretion to determine whether, when, and to what extent, the $9,200 appropriation shall be used for salaries and maintenance of the attorney general's office; that unless demands of the department of roads and irrigation are so great that they cannot be met from direct appropriation to the attorney general's office, these funds should not be used. The respondent prays for a declaratory judgment fixing the rights, status, and legal relations of the parties under the act, and avers that he will cheerfully abide the judgment of the court.

The relators moved for the issuance of a peremptory writ on the ground that the answer does not state facts sufficient to justify the refusal to approve the vouchers, and that the answer does not constitute a defense.

The parties to this litigation do not occupy the position of ordinary litigants. They appear here in their official capacities. In their official capacities they are servants of a common master, to wit, the state of Nebraska. Their rights, duties, and responsibilities are fixed by the state Constitution and the acts of the legislature. The parties here are re-

sponsible to the people of this state for the performance of those duties.

The solution of the issue here presented, then, rests upon an interpretation of the law of the state of Nebraska and the intention of the legislature with reference to the expenditure of this fund. One of three propositions must be true: *First,* the discretion and the exercise of judgment as to the expenditure of the fund rests with the relator, and after the relator has reached a decision as to its expenditure, approval by the respondent is a ministerial act; or *second,* the relator and the respondent have a discretionary power in the expenditure of the fund, and there must be an affirmative determination by both before there can be an expenditure; or, *third,* the discretion and judgment with reference to the expenditure of the fund rests solely with the respondent, and the acts of the relator with reference thereto are ministerial.

In determining which of the three propositions is controlling, we consider the duties of the two parties, which the legislature must have contemplated, and the language of the act. Generally speaking, the relator is the legal adviser of the officials of the state and represents the state in litigation. To perform that function properly, it is necessary that his office be maintained, and that the employees of the office of the relator receive their compensation as provided by law and without delay.

So far as the duties covered by this appropriation are concerned, the general duty of the respondent is to build and maintain the highways of the state and to look to and receive from the relator legal advice as to any problems connected therewith. The respondent is responsible for the work of his department, and the decision of the question as to whether or not legal service is needed rests with him. Questions of personnel, methods of doing the work, and the correctness of the service given to the respondent by the relator are matters that rest with the relator, not with the respondent.

It must also be recognized that the purpose of the state,

in creating the offices held by the relator and the respondent, was to have the work of the state efficiently, promptly, and properly executed, and that it is the desire of the state to have its employees compensated for work done.

What was the intention of the legislature in making the appropriation subject to the expressed limitation? It is necessary that we define the terms used in the language under consideration, and, in doing so, give to that language the usual meaning. Each expression is to be construed in the light of the other; the expressions are to be reconciled and a meaning given to each if possible.

The word "direction" is defined by Webster as "that which is imposed by directing; a guiding or authoritative instruction; * * * order; command."

The words "subject to" are defined as "dependent upon; * * * limited by; * * * under the control, power, or dominion of." 60 C. J. 673.

The word "approval" is defined by Webster as meaning "approbation, sanction." It is defined in the authorities as follows:

"The word 'approved' naturally imports the exercise of judgment and discretion; and the power to approve ordinarily implies a power to disapprove.

"To 'approve' or give 'approval' is in its essential and most obvious meaning to confirm, ratify, sanction, or consent to some act or thing done by another. The word 'approve' does not, *ex vi termini*, necessarily import the exercise of discretion, but from the connection in which the term is used it often involves the idea of discretion and adjudication, and is seldom construed as requiring a mere ministerial act. 4 C. J. 1464." *Apfel v. Mellon,* 33 Fed. (2d) 805.

It is apparent that the second proposition stated above, to wit, the relator and the respondent have a discretionary power in the expenditure of the fund, and there must be an affirmative determination by both before there can be an expenditure, is controlling.

We cannot agree with the contention of the respondent

that this fund is not to be expended until all other funds appropriated to the attorney general's office have been exhausted, nor can we agree with his contention that the matter is left to the discretion of the respondent to determine when it is necessary that this fund be used to pay for legal services to the department of roads and irrigation. Examination of the appropriation bill reveals that in several instances the legislature provided for the payment of legal services out of appropriations for various agencies of the state. In this particular instance, the highway cash fund of the department of roads and irrigation is a fund not accumulated from the general revenues of the state. It is reasonable to hold that the legislature intended that the department of roads and irrigation should carry the cost of its legal services within the limits of the appropriation, and that the fund covered by this appropriation should be used for the payment of legal services rendered to said department whenever and to the extent required by that department. The attorney general's office is not an office run for profit. The amount of work involved in rendering the services and the proportionate charge that should be made therefor is a matter peculiarly within the knowledge and the discretion of the attorney general. In the absence of a showing that such charges are unreasonable or unconscionable, his decision as to the allocation of expenditures must be controlling.

We cannot agree with the contention of the respondent that this work should be figured on a piece-meal basis. The contrary legislative intent is clearly demonstrated by the provision that the appropriation shall be used for the payment of salaries and office maintenance. The payment of salaries means something in the nature of a regular pay for work performed rather than for the payment of services on a job basis. The adjustment of the cost of this service as fixed by the attorney general appears to be reasonable and a proper basis upon which to place the cost of that service.

Holding, as we do, that the respondent has a discretion

in the matter of approving the expenditure of this fund for legal services of his department, we come to the question as to how that approval may be indicated.

The respondent has no duty to perform in the matter except to determine the need for legal service and to request and receive the same. After the service is requested, the determination as to what shall be done, the research involved, and the mechanical work in rendering such service rests with the attorney general.

We conclude, therefore, that the approval of the respondent for the expenditure of funds from this appropriation is indicated when the services are requested and rendered. From the record here presented, it appears clear that services were rendered to the department of roads and irrigation by the relators during the month of July, 1939. The respondent has exercised the discretion which is vested in him by the act, and therefore has approved the expenditure in fact. There remains nothing for him to do but to perform the ministerial act of examining the voucher as to form and place his signature thereon. The peremptory writ is therefore granted.

WRIT ALLOWED.

JOHNSEN, J., dissenting.

I agree that the appropriation involved is available for payment of salaries and maintenance in the attorney general's office, to the extent of the time and cost to that office of any services rendered the department of roads and irrigation. The method of attempted withdrawal in this case, however, is to me improper. I am unable to accept the view that the appropriation is intended as a general fund that may be drawn upon whimsically, merely because some services have been rendered the department. It seems to me rather that the fund was intended to be used only in direct payment of time actually spent or cost actually incurred. Certainly it would be unnatural and misleading, for example, to allow the salaries of any of the members of the attorney general's staff to be paid out of the fund, whose time had not actually been spent upon the business of the

department. On the same principle, it appears to me equally improper to permit a salary withdrawal in this case in favor of an individual member of the staff in excess of the portion of his time actually spent for the department. Yet, notwithstanding that it is openly admitted that such is the situation here, and that the individual in whose favor a withdrawal is being made has not personally devoted time to the work of the department equivalent to the amount of the withdrawal, the majority opinion is indorsing this method of disbursing public funds. Such an indirect application might easily become a screen. It certainly is not sound business practice, and (unless it is a fallacy to assume that the state's affairs ought to be conducted on a business basis) there is no reason to approve it. If separate vouchers had been submitted for the portion of time spent by the several members of the attorney general's staff on matters in which the department of roads and irrigation had requested or required the services of the attorney general's office, and the state engineer had refused to approve them, I would agree that a writ of mandamus should issue.

MESSMORE, J., concurs in the dissent.