STATE OF HAWAII *v.* CHARLES P. WILLBURN.

No. 4552.

APRIL 19, 1967.

RICHARDSON, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

Defendant was charged in the District Court of
Honolulu with a violation of specified sections of "the
Rules and Regulations Governing Waikiki Beach, De-
partment of Transportation, State of Hawaii, promulgated

pursuant to Section 112-5, Revised Laws of Hawaii, 1955, as amended." On defendant's motion, the magistrate dismissed the charge on the ground that: "* * * Act 115 [S.L. 1965 which amended section 112-5, R.L.H. 1955] is vague and indefinite, based on no standard or policy from which the administrative body could promulgate any rules or regulations." The court concluded that "* * * in effect, the Legislature has delegated to the administrative agency power and authority to make the law which is an illegal delegation."

An appeal having been taken by the State on points of law, the sole question before us is whether R.L.H. 1955, § 112-5, as amended by Act 115, S.L. 1965 (Supp. 1965), is so lacking in a proper standard as to preclude the promulgation under it of any valid regulation whatsoever.

Section 112-5, R.L.H. 1955, was further amended by Act 44, S.L. 1966, but that amendment is not involved. As amended by Act 115, S.L. 1965, section 112-5 read in pertinent part as follows:

"Any provision of law to the contrary notwithstanding, and subject to chapter 6C, Revised Laws of Hawaii, 1955, as amended, and to terms, conditions and covenants of easements herein described, the director shall also be authorized with respect to lands along the shores of the State encumbered by a public easement to promulgate rules and regulations governing any and all uses and activities within such easement area."

While the term "lands along the shores" is a broad one, in the light of the title of Act 115[1] it appears that the legislative purpose was to govern activities at public

---

[1] The title of an act may be resorted to as an aid to construction where the language of the act is ambiguous. *Smithies* v. *Conkling*, 20 Haw. 600, 605; *In re Contested Election*, 15 Haw. 323, 331.

In this case the title relates to regulations "governing commercial and beach activities at public beaches."

beaches. From the body of the act it further appears that only activities within an "easement area" were to be regulated. By an "easement area," as the act shows, was meant land encumbered by a public easement. Thus the act was limited to public beaches dependent upon and enjoyed through easement rights, as distinguished from beaches publicly owned. For an understanding of the situation, a brief review will be necessary.

S.L. 1927, c. 273, provided for the building of a beach at Waikiki, and directed that construction work should not begin "unless and until legal arrangements are made whereby the general public shall be assured of the right to use such portion of any beach built as lies within seventy-five (75) feet shoreward of the mean high water mark." It also was provided that: "Any beach so built shall be and remain free of all structures." Further funds for beach improvements were appropriated by Act 201, S.L.. 1963, section 1B, item 3(c), as amended by Act 31, S.L. 1964. This appropriation was for Kuhio Beach improvements. With reference to private owners along the shoreline from the northern boundary of Kuhio Beach to the northern boundary of the Royal Hawaiian Hotel, it was required that before constructing the Kuhio Beach improvements the State enter into an agreement with these owners whereby no accretion to their land would accrue thenceforth, except as agreed.

The original enactment, Act 201, S.L. 1963, with evident reference to the agreements made under the 1927 act, provided that "the existing public easement created under the 1928-1929 Waikiki Beach Reclamation Agreements shall remain as is; and provided further that the State of Hawaii shall not construct any permanent structures in the easement area fronting any private property." As set forth in the urgency clause of the amendatory act, Act 31, S.L. 1964, § 1, difficulty was encountered because

the easement areas created by the 1928-1929 agreements were measured landward from mean high water mark "as it may exist from time to time," and it was uncertain how they were to be measured under the new conditions. By the 1964 amendments the attorney general was given a free hand in drafting the new agreement, subject to the approval of the governor, specific reference to the 1928-1929 agreements being eliminated from the appropriation provisions.

We think it clear that the easement areas established by the 1928-1929 agreements made under the 1927 act, as the same might be modified as to location or terms by the agreement made pursuant to the 1963 and 1964 acts, were easement areas within the meaning of R.L.H. 1955, § 112-5, as amended by Act 115, S.L. 1965. Whether the easement areas covered by Act 115 included other areas besides the ones above identified, we are not called upon to say. It is sufficient for present purposes that there were at least some identifiable areas.

Defendant has not shown that he has standing to attack the act for indefiniteness as to the areas covered by it. *Cf., Gorieb* v. *Fox,* 274 U.S. 603, 606; *Territory* v. *Reyes,* 33 Haw. 180, 194-95; *Territory* v. *Field,* 23 Haw. 230, 232-33; *Territory* v. *Hoy Chong,* 21 Haw. 39, 42. As stated in *Southern Ry.* v. *King,* 217 U.S. 524, 534:

> "It is the settled law of this court that one who would strike down a state statute as violative of the Federal Constitution must bring himself by proper averments and showing within the class as to whom the act thus attacked is unconstitutional. He must show that the alleged unconstitutional feature of the law injures him, and so operates as to deprive him of rights protected by the Federal Constitution."

The same principle applies to an attack based on the State constitution.

Moreover, any constitutional question which may be avoided by going to trial is not to be anticipated. *Adams v. Klein,* 38 Haw. 346. So we must assume for present purposes that further proceedings would make no difference, and must confine defendant to the contention that the statute will not support any regulation whatsoever.

There is still another consideration. Due to this being an appeal on points of law, only points decided by the magistrate are before us for review,[2] and we are not now concerned with the validity of the regulations, on their face or as applied to defendant. Indeed, so far as appears the regulations were not admitted into evidence,[3] and while they have been appended to the State's brief they are not properly before us.

Also appended to the State's brief are copies of the 1928-1929 Waikiki Beach Reclamation Agreements, and a copy of an agreement entitled "Surf Rider-Royal Hawaiian Sector Beach Agreement," dated May 28, 1965. These likewise were not admitted into evidence so far as appears. They are not a part of the certified record.

However, from section 112-5 itself, as amended by Act 115, S.L. 1965, it appears that there were "terms, conditions and covenants" of the easements which were the subject matter of the statute, and that the legislature had these in view. If the purpose was to provide for compliance with the terms, conditions and covenants of the easements covered by the statute,[4] this in itself furnished a standard governing the administrative body in promulgating the regulations authorized by the statute. We are of the opinion that this was the intent. The statute

---

[2] *Adams* v. *Klein, supra,* 38 Haw. 346, 349, construing what is now R.L.H. 1955, § 208-1.

[3] See R.L.H. 1955, § 224-7.

[4] As above stated, these included at least the easements established by the 1928-1929 agreements. We are not called upon to say whether other areas as well were included.

used the term "subject to," which term was used in the sense of a direction that the administrative officer be governed by what followed, as can be seen from the reference therein made to chapter 6C, R.L.H. 1955 (Supp. 1965), the Administrative Procedure Act. That the term "subject to" may mean "limited by," "subordinate to," "regulated by," is well established. *Cf., State* v. *Tilley,* 137 Neb. 173, 288 N.W. 521, 523; *Shay* v. *Roth,* 64 Cal. App. 314, 221 Pac. 967, 969; *State Revenue Comm'n* v. *Columbus Bank & Trust Co.,* 50 Ga. App. 486, 178 S.E. 463, 464; 83 C.J.S., *"Subject,"* at 555-56. Further light on the meaning of the statute is cast by considering the scope of the regulatory power conferred, that is, that it was limited to easement areas and not conferred as to all public beaches. This shows the legislative purpose to provide a means of carrying out the terms, conditions and covenants upon which the easements were granted, since a more general purpose would have brought all public beaches within the coverage of the act.[5]

When the statute is so construed and it is recognized that the legislative purpose was to provide for compliance with the terms, conditions and covenants of the easements, there is no absence of a proper standard and no unconstitutionality appears. Even under the requirements of *A. L. A. Schechter Poultry Corp.* v. *United States,* 295 U.S. 495, 535, as explained in *Fahey* v. *Mallonee,* 332 U.S. 245, 249, both cited by defendant, there is no unconstitu-

---

[5] Defendant argues that the words "any provision of law to the contrary notwithstanding" show that the statute was intended to authorize the issuance of regulations "having the effect of repealing laws previously passed by the legislature." We do not agree. These words, and the word "also" in the phrase "the director shall also be authorized," were intended to convey the thought that the director of transportation was being given authority additional to that conferred by the other paragraphs of section 112-5, the section to which this new authority was added, and that such authority was conferred notwithstanding any provision of law which might otherwise have been deemed to vest such authority elsewhere.

tional delegation of the legislative function. The legislature has merely conferred authority to deal with that which "could be the subject of judicial condemnation without further legislation,"[6] and has attached penalties to the transgression of the terms, conditions and covenants upon which the easement rights were obtained, when the acts which constitute such transgression have been defined by the regulations. It is the legislature itself which, by R.L.H. 1955, § 112-23, has made it a penal offense to violate the regulations which define the acts constituting a transgression of the provisions governing the easement rights. *Cf., United States* v. *Grimaud,* 220 U.S. 506, 521.

*Panama Refining Co.* v. *Ryan,* 293 U.S. 388, also cited by defendant, turned on the construction of the statute. While no standard was found by the majority, as stated by Mr. Justice Cardozo, dissenting: "The prevailing opinion concedes that a standard will be as effective if imported into § 9(c) by reasonable implication as if put there in so many words." (293 U.S. at 435). We have given a reasonable construction to the statute before us, taking into consideration its purpose, background, and provisions as a whole. *American Power & Light Co.* v. *Securities & Exch. Comm'n,* 329 U.S. 90, 104; *In re Berardi,* 23 N.J. 485, 129 A.2d 705, 708; *cf., State* v. *Taylor,* 49 Haw. ——, —— P.2d ——.

As to defendant's reliance on *Lanzetta* v. *New Jersey,* 306 U.S. 451, and like cases dealing with the question of whether a penal statute, complete in itself and not de-

---

[6] *A. L. A. Schechter Poultry Corp.* v. *United States, supra,* 295 U.S. at 535, quoted in *Fahey* v. *Mallonee, supra,* 332 U.S. 245, 249.

Defendant contends that: "Courts have generally required a higher degree of intelligible standards directed to administrative agencies to carry out the directions of the legislative branch of the government where the right to create a crime is sought to be delegated," citing *Fahey* v. *Mallonee, supra,* at the point where the court commented on *Schechter.* But, as seen, this case comes within the class distinguished as valid in *Schechter.*

pendent upon the adoption of regulations under it, is vague and indefinite, we do not find these cases applicable. On the present record, what is presented is a question of unconstitutional delegation of legislative power under the doctrine of separation of powers, State Constitution, art. III, § 1. Since the statute is not so lacking in a proper standard as to preclude the promulgation under it of any valid regulation whatsoever, and since this is the only question presented, we reverse and remand for further proceedings.

*T. Irving Chang* and *John A. Radway, Jr.,* Deputy Prosecuting Attorneys, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney, with them on the briefs), for the State, appellant.

*Harriet Bouslog* (*Bouslog & Symonds* of counsel), for defendant, appellee.

---

### DISSENTING OPINION OF MIZUHA, J.

I respectfully dissent.

Act 115, S.L. 1965,[1] after stating in section 1 that the authority of the transportation director was subject to "terms, conditions and covenants of easements herein described," failed to enumerate the easements in the act. Yet the majority opinion states, "If the purpose was to provide for compliance with the terms, conditions and covenants of the easements covered by the statute, this in itself furnished a standard governing the administrative body in promulgating the regulations authorized by the statute. We are of the opinion that this was the intent."

---

[1] Act 115, S.L. 1965 reads:

" 'Any provision of law to the contrary notwithstanding, and subject to chapter 6C, Revised Laws of Hawaii, 1955, as amended, and to terms, conditions and covenants of easements herein described, the director shall also be authorized with respect to lands along the shores of the State encumbered by a public easement to promulgate rules and regulations governing any and all uses and activities within such easement area.' "

I agree with the district court that Act 115 is "vague and indefinite" for the statute failed to enumerate the easements. The reference to "terms, conditions and covenants" may or may not have any relation to "uses and activities within the easement area" nor is there any certainty that all the easement grants are subject to the same terms, conditions and covenants relied upon as furnishing a standard governing the administrative body in promulgating the regulations. Without any definite easement with its "terms, conditions and covenants" to guide the director of transportation, the district court was correct in ruling that the Act 115 was "based on no standard of policy from which the administrative body could promulgate any rules or regulations * * *."

In 1966, the legislature passed Act 44, S.L. 1966[2] which is quoted in its entirety below. The standards the director

---

2 "*ACT* 44.

"A Bill for an Act Amending Chapter 112 of the Revised Laws of Hawaii 1955, as Amended, Relating to Harbors.

"*Be it Enacted by the Legislature of the State of Hawaii:*

"SECTION 1. This Act is hereby declared to be an urgency measure deemed necessary in the public interest within the meaning of section 11 of Article III of the Constitution of the State of Hawaii.

"The following is a statement of facts constituting such urgency:

"On the basis of an improper delegation of power, the District Court recently ruled that Act 115, Session Laws of Hawaii 1965, giving the Director of Transportation the power to promulgate regulations governing the uses and activities wherever the State has a public easement along the shores of the State, was unconstitutional. A review of the enabling statutes upon which the Hawaii Shore Waters Regulations were promulgated indicates that they should be amended in order to avoid similar attacks on the constitutionality of said regulations.

"Though the constitutionality of the Hawaii Shore Waters Regulations has not yet been contested, it is desirable that the enabling statute be amended to provide more specific language to insure against such a contest. The safety and protection of tourists and the users of the waters of the State would thus be assured.

"SECTION 2. Section 122-5 of the Revised Laws of Hawaii 1955, is hereby amended by adding a new paragraph, to read as follows:

" 'In addition to the powers vested in the director of transportation by sections 112-1 and 112-3, the director, to promote public safety, health and welfare in or on the shore waters and shores and on beaches encumbered with easements in favor of the public, may promulgate, alter, amend and repeal rules and regulations governing the shore waters, shores and beaches encumbered with easements in favor of the public.

must now follow in promulgating his rules and regulations are to be based solely upon "public safety, health and welfare in or on the shore waters and shores and on beaches encumbered with easements * * *."

---

The rules and regulations to be promulgated under this paragraph may include:

" '(a) Safety measures, requirements and practices in or on the shore waters and shores of the State;

" '(b) The licensing and registration of persons or organizations engaged in commercial activities in or on the shore waters or shores of the State;

" '(c) The licensing and registration of equipment utilized for commercial activities in or on the shore waters or shores of the State;

" '(d) The prohibition of the following uses and activities on beaches encumbered with easements in favor of the public: (1) commercial activities, (2) the storage, parking and display of any personal property, (3) the placement of any structures or obstructions, and (4) any other uses or activities that may interfere with the public use and enjoyment of said beaches.

" '(e) Any other matters relating to the safety, health and welfare of the general public.'

"SECTION 3. Part I of chapter 112 is hereby amended by adding a new section, to read as follows:

" 'Section 112-     . *Definitions.* For the purpose of this part, if not inconsistent with the context:

" ' "Shore waters and shores" shall mean all ocean waters below mean high water mark and within the jurisdiction of the State.

" ' "Beaches encumbered with easements in favor of the public" means any lands which lie along the shores of the State above mean high water mark and which are now, or may hereafter be encumbered by easements in favor of the public for bathing purposes and for foot passage.'

"SECTION 4. Severability. If any portion of this Act or its application to any persons or circumstance is held to be invalid for any reason, then the legislature hereby declares that the decision of invalidity shall not affect the validity of the remaining portions of this Act.

"SECTION 5. This Act shall take effect upon its approval."